[No. 35523-0-II.   Division Two.   May 20, 2008.]

The State of Washington, *Respondent*, v. Rex Edson Whipple, *Appellant.*

*Alton B. McFadden II* (of *Olsen & McFadden, Inc.*, for appellant.

*Juelie B. Dalzell, Prosecuting Attorney*, for respondent.

¶1 BRIDGEWATER, J. — Rex Edson Whipple appeals his conviction of nine counts of possessing depictions of a minor engaged in sexually explicit conduct for possessing photographs of a minor, naked female. We hold that when the evidence does not demonstrate that the defendant aided, invited, employed, authorized, or caused the photographed minor to become naked, there is insufficient evidence to establish the minor victim engaged in sexually explicit conduct. We hold that the State failed to meet its burden under former RCW 9.68A.070 (1990),[1] showing that Whipple possessed visual matter depicting a minor engaged in sexually explicit conduct. We reverse and remand.

## FACTS

¶2 Whipple visited his son and daughter-in-law, Shaun Whipple,[2] at their home in Arizona in March 2006. Shaun accessed Whipple's laptop computer while he was at a movie with his son. Whipple's employer, the Chimacum

---

[1] At the time of Whipple's conviction, a conviction under former RCW 9.68A.070 was a class C felony. In 2006, the legislature revised the statute from a class C felony to a class B felony.

[2] By referring to Shaun Whipple by her first name for clarity, we mean no disrespect.

School District, issued the Apple Powerbook G-4 to him.[3] She discovered multiple still shots and short videos of Whipple's 15-year-old stepdaughter, E.J.E. The images showed E.J.E. in various stages of undress, including some in which she was completely naked. It did not appear that E.J.E. was aware that she was being videotaped.

¶3 Shaun spoke to E.J.E.'s mother, Suzanne Duscha, over the telephone and told her about the images. Duscha confronted Whipple on March 11, while he was still in Arizona. He acted stunned when she brought up the images. He then searched his computer and told her that the images of E.J.E. were on his laptop. After their conversation, Whipple decided to come home from Arizona. Meanwhile, Duscha called the police and moved out of the house. Whipple returned to the residence shortly thereafter, but Duscha had no further conversations with him about the matter.

¶4 On Saturday, March 11, 2006, Whipple left a message with Detective Joe Nole of the Jefferson County Sheriff's Office, stating that he wanted to meet with him.[4] They arranged to meet the following day. But Whipple failed to show up for the meeting. Detective Nole called Whipple, who informed him that he was on his way to the hospital and that he had lost his laptop. Whipple and Detective Nole briefly discussed the images of E.J.E. that Shaun had discovered on the laptop. Shortly thereafter, Detective Nole applied for and was granted warrants to search Whipple's truck, hotel room, residence, school office, and the school computer files. During an investigation, the State recovered backup copies of the images from the school's file server.

¶5 Following its investigation, the State charged Whipple by amended information with 1 count of sexual exploitation of a minor and 10 counts of possessing depictions of a minor engaged in sexually explicit conduct. At the

---

[3] At the time, Whipple was the principal of Chimacum High School.

[4] Whipple and Detective Nole had previously worked together for a number of years on various school projects.

close of the State's case, the trial court granted Whipple's motion to dismiss 1 count of sexual exploitation of a minor. But it denied Whipple's motion to dismiss the 10 counts of possessing depictions of a minor engaged in sexually explicit conduct. Ultimately, the trial court, in a bench trial, convicted Whipple of 9 of the 10 charged counts of possessing depictions of a minor engaged in sexually explicit conduct under former RCW 9.68A.070.

## ANALYSIS

¶6 Under former RCW 9.68A.070, a person who knowingly possesses visual or printed matter depicting a minor engaged in sexually explicit conduct is guilty of a class C felony. Whipple argues that the evidence is insufficient to prove that the images depicted E.J.E. engaged in sexually explicit conduct.

¶7 Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Tilton*, 149 Wn.2d 775, 786, 72 P.3d 735 (2003). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980) (citing *State v. Gosby*, 85 Wn.2d 758, 539 P.2d 680 (1975)). We must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004) (citing *State v. Cord*, 103 Wn.2d 361, 367, 693 P.2d 81 (1985)).

¶8 The crux of Whipple's argument turns on the court's interpretation of "[s]exually explicit conduct" in the context of former RCW 9.68A.070. The legislature has defined "[s]exually explicit conduct" as actual or simulated

(a) Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex or between humans and animals;

(b) Penetration of the vagina or rectum by any object;

(c) Masturbation;

(d) Sadomasochistic abuse for the purpose of sexual stimulation of the viewer;

(e) Exhibition of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor, for the purpose of sexual stimulation of the viewer;

(f) Defecation or urination for the purpose of sexual stimulation of the viewer; and

(g) Touching of a person's clothed or unclothed genitals, pubic area, buttocks, or breast area for the purpose of sexual stimulation of the viewer.

RCW 9.68A.011(3). Only paragraph (e) applies here. Thus, the meaning of "sexually explicit conduct" in this case turns on what constitutes an "[e]xhibition of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor, for the purpose of sexual stimulation of the viewer." *See State v. Grannis*, 84 Wn. App. 546, 549, 930 P.2d 327, *review denied*, 133 Wn.2d 1018 (1997).

¶9 In *Grannis*, we addressed this exact issue, deciding what is required to prove possessing depictions of a minor engaged in sexually explicit conduct. *Grannis*, 84 Wn. App. at 548. There, the defendant clandestinely photographed minor girls on a playground and, later, clandestinely photographed one of the girls taking a bath. *Grannis*, 84 Wn. App. at 551. We held that an exhibition is inanimate and without any purpose of its own. *Grannis*, 84 Wn. App. at 549. We found no evidence that the defendant initiated, contributed to, or in any way influenced the girls' conduct; and without evidence to prove that the purpose of the person or persons who initiate, contribute to, or otherwise influence the exhibition occurrence is to stimulate the viewer, the evidence did not establish that the girls were

engaged in "sexually explicit conduct" within the meaning of RCW 9.68A.011(3). *Grannis*, 84 Wn. App. at 551-52.[5]

¶10 Likewise, our Supreme Court applied similar reasoning in *State v. Chester*, 133 Wn.2d 15, 940 P.2d 1374 (1997). There, the defendant also clandestinely photographed his minor stepdaughter nude as she exited the shower and dressed herself. *Chester*, 133 Wn.2d at 17-18. The minor did not know she was being filmed. *Chester*, 133 Wn.2d at 20. Moreover, the defendant did not influence, alter, or affect her conduct in any way. *Chester*, 133 Wn.2d at 20. The State charged the defendant with sexually exploiting a minor in violation of RCW 9.68A.040. *Chester*, 133 Wn.2d at 19. That statute, like former RCW 9.68A.070, required proof that a minor engaged in sexually explicit conduct. *See Chester*, 133 Wn.2d at 20. After a jury convicted the defendant, we reversed because the State presented insufficient evidence to support the conviction. *Chester*, 133 Wn.2d at 19-20; *State v. Chester*, 82 Wn. App. 422, 430, 918 P.2d 514 (1996), *aff'd*, 133 Wn.2d 15, 940 P.2d 1374 (1997).

¶11 The Supreme Court affirmed our rationale. *Chester*, 133 Wn.2d at 22-24. It held that the legislature did not intend "to criminalize the photographing of a child, where there is no influence by the defendant which results in the child's sexually explicit conduct." *Chester*, 133 Wn.2d at 23. And because there was no evidence that the defendant aided, invited, employed, authorized, or caused his stepdaughter to engage in sexually explicit conduct, it could not find him guilty of sexually exploiting a minor. *Chester*, 133 Wn.2d at 23. In sum, the defendant in *Chester* was not

_____

[5] The State refers us to *State v. Griffith*, 129 Wn. App. 482, 488, 120 P.3d 610 (2005), *review denied*, 156 Wn.2d 1037 (2006) (citing *Grannis* for the proposition that "[i]f a minor is unclothed and the picture is for the sexual stimulation of the viewer, then it meets the definition of sexually explicit conduct," but failing to address this court's subsequent and relevant analysis of the term "purpose" in RCW 9.68A.011(3)(e)). This case is inapposite because it concerned the basis of a search warrant for photographs, et cetera, where a minor had been posed for the photographs. Also, it is cited as an interpretation of our own case; if any clarification is necessary, this case will clarify our holding in *Grannis*.

actively involved in causing the exhibition or any sexually explicit conduct. *Chester*, 133 Wn.2d at 23.

¶12 To contrast, in *State v. Myers*, we concluded that there was sufficient evidence to uphold the defendant's conviction of sexually exploiting a minor in violation of RCW 9.68A.040. *State v. Myers*, 82 Wn. App. 435, 439, 918 P.2d 183 (1996), *aff'd*, 133 Wn.2d 26, 941 P.2d 1102 (1997). We reasoned that the minor engaged in an " '[e]xhibition of the genitals . . . for the purpose of sexual stimulation of the viewer' " because the defendant videotaped his minor daughter in the bathtub, over her objection, and coaxed her into positions that exhibited her vagina. *Myers*, 82 Wn. App. at 438-40 (quoting RCW 9.68A.011(3)(e)). In other words, the defendant had initiated or contributed to the exhibition of the minor's genitals with the purpose of sexually stimulating the viewer. Therefore, the minor engaged in sexually explicit conduct. *Myers*, 82 Wn. App. at 439-40.

¶13 Here, the evidence reveals that Whipple photographed E.J.E. from outside her exterior bedroom window. The parties stipulated that Whipple "did not initiate, contribute to, take any affirmative act to cause, or otherwise influence E.J.E. (date of birth 7/13/90) to engage in the conduct at issue in this case including her dressing and undressing, which was recorded on video and pictures during the periods of time charged in the amended information." Clerk's Papers at 11. Moreover, the parties also stipulated that (1) E.J.E. did not know the camera was present during the charged periods; (2) E.J.E. did not know anyone was observing her as she undressed during the charged periods; and (3) no other person contributed to or influenced E.J.E.'s conduct that was recorded during the charged periods. In fact, the record is devoid of any evidence suggesting that Whipple aided, invited, employed, authorized, or caused E.J.E. to engage in sexually explicit conduct. *See Chester*, 133 Wn.2d at 22-23. Although we find this conduct despicable, we are constrained to evaluate it under this specific statute. Consequently, the evidence is insufficient to support Whipple's nine convictions of pos-

sessing depictions of a minor engaged in sexually explicit conduct.[6] We hold that the trial court erred and we reverse its decision.

¶14 Reversed and remanded to vacate the convictions.

VAN DEREN, A.C.J., concurs.

¶15 PENOYAR, J. (dissenting) — The panel has carefully considered and discussed former RCW 9.68A.070 (1990), the arguments of counsel, and the case law. This process has been far more difficult than it might have been had the legislature expressed its intent more precisely. While I see the logic of the majority opinion and feel that this is a close case, I reach a different result.

¶16 Parsing the language of former RCW 9.68A.070 and RCW 9.68A.011(3)(e) relevant to this case, it requires proof that the defendant "knowingly possesses visual . . . matter depicting a minor engaged in" "[e]xhibition of the genitals or unclothed pubic or rectal areas . . . for the purpose of sexual stimulation of the viewer." In construing "engaged" and "for the purpose of sexual stimulation of the viewer," the cases agree that the focus need not be on the minor and in most cases will be on the actions and purpose of the defendant.[7]

¶17 The difficulty arises with the word "exhibition." Here, I did not find *State v. Myers*, 82 Wn. App. 435, 918 P.2d 183 (1996), *aff'd*, 133 Wn.2d 26, 941 P.2d 1102 (1997), and *State v. Chester*, 133 Wn.2d 15, 940 P.2d 1374 (1997), helpful because they deal with a different statute, RCW 9.68A.040. However, *State v. Grannis*, 84 Wn. App. 546, 930 P.2d 327 (1997), required some direct participation by the defendant in the exhibition,

---

[6] We note that this behavior is specifically prohibited under the voyeurism statute, RCW 9A.44.115(2)(a) and (b), and we have upheld such a conviction in *State v. Stevenson*, 128 Wn. App. 179, 114 P.3d 699 (2005).

[7] *See State v. Chester*, 133 Wn.2d 15, 19-20, 22-23, 940 P.2d 1374 (1997); *State v. Griffith*, 129 Wn. App. 482, 488, 120 P.3d 610 (2005); *State v. Grannis*, 84 Wn. App. 546, 549-50, 930 P.2d 327 (1997); *State v. Myers*, 82 Wn. App. 435, 440, 918 P.2d 183 (1996) (Turner, J., concurring), *aff'd*, 133 Wn.2d 26, 941 P.2d 1102 (1997).

citing *Chester* before its review by the Washington Supreme Court. *State v. Griffith*, 129 Wn. App. 482, 488, 120 P.3d 610 (2005), focused on the intent of the defendant in capturing the image and stated, "If a minor is unclothed and the picture is for the sexual stimulation of the viewer, then it meets the definition of sexually explicit conduct." Though seemingly reaching an opposite result, *Griffith* cites *Grannis* for this proposition. *Griffith*, 129 Wn. App. at 488.

¶18 Consistent with the construction given by the courts to "engaged" and "for the purpose of sexual stimulation of the viewer," I construe "exhibition" to mean "showing"[8] and focus on the defendant's actions and intent, not those of the minor. However, I would not find any requirement that the defendant interact with the minor at the time of the filming.

¶19 In sum, giving the words of the statute their ordinary meaning in their context, I read the parsed language of former RCW 9.68A.070 and RCW 9.68A.011(3)(a) to say: "knowingly possesses visual . . . matter depicting a minor [involved] in[9] [but not necessarily aware of] showing genitals or unclothed pubic or rectal areas . . . for the [defendant's] purpose of sexual[ly] stimulat[ing] the viewer."

¶20 I find that the evidence supported Whipple's conviction of nine counts of possession of a depiction of a minor engaged in sexually explicit conduct.

---

[8] *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 796 (2002) (defining "exhibition" as "an act or instance of showing").

[9] *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 751 (2002) (defining "engage" as "to become involved or entangled").