FILED
COURT OF APPEALS
DIVISION II

2014 JUN 10 AM 8: 39

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43585-3-II |
| Respondent/Cross-Appellant, | |
| v. | |
| STEVEN CRAIG POWELL, | PUBLISHED OPINION |
| Appellant/Cross-Respondent. | |

WORSWICK, J. — Steven Powell appeals his convictions for 12 counts of voyeurism, arguing that the trial court erred by denying his CrR 3.6 motion to suppress evidence seized pursuant to an invalid search warrant. The State cross appeals the trial court's *Knapstad*[1] dismissal of the charge of second degree possession of depictions of a minor engaged in sexually explicit conduct.

Powell argues that the trial court erred by failing to make written findings of fact and conclusions of law as required by CrR 3.6, and ruling that the affidavit supporting the search warrant established probable cause to issue the warrant. In its cross appeal, the State argues that the legislature's 2010 amendment[2] to former RCW 9.68A.011(3) (2002) expanded the definition of sexually explicit conduct to include the conduct depicted within the images that Powell possessed.

---

[1] *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986); CrR 8.3(c).

[2] LAWS OF 2010, ch. 227, § 3.

Because the trial court was not required to enter written findings and conclusions in this case and the supporting affidavit established probable cause to issue the search warrant, we affirm the trial court's denial of Powell's CrR 3.6 motion. But because the legislature's 2010 amendment to the definition of sexually explicit conduct expanded the definition to include the conduct depicted within the images in Powell's possession, we reverse the trial court's *Knapstad* dismissal of the charge of second degree possession of depictions of a minor engaged in sexually explicit conduct and remand for further proceedings.

FACTS

A. *The Affidavit*

Joshua Powell was married to Susan Powell, who disappeared under suspicious circumstances. The State investigated Susan's disappearance as a kidnapping and murder; Joshua was a person of interest in her disappearance.[3] During the investigation, Joshua and his father Steven Powell stated that they had over 2,000 pages of Susan's journal entries.[4]

The State requested a search warrant to search Powell's house and to seize physical and digital copies of Susan's journal entries (collectively Susan's journals). The request stated:

> That, on or about the 6th day of December, 2009 in West Valley, Utah, felonies, to-wit: Murder in the First Degree, a violation of R.C.W. 9A.32.030, Kidnapping, a violation of R.C.W. 9A[.]40.020, and Obstructing a Public Servant, a violation of R.C.W. 9A.76.020, were committed by the act, procurement or omission of another, that the following evidence, to-wit:
>
> 1. Journals belonging to Susan Powell.

---

[3] We refer to Joshua and Susan Powell by their first names for clarity. We intend no disrespect.

[4] Joshua and Powell lived together in Powell's house.

> 2. Digital media to include but not limited to laptop computers, traditional tower desk top computers, any type of device that could store digital media such as electronic and or digital copies of Susan Powell's journals.
>
> . . . .
>
> [I]s material to the investigation or prosecution of the above described felony.

Clerk's Papers (CP) at 52-53. The affidavit supporting the search warrant provided the following facts:

> Your Affiant was told by Detective Maxwell, that assisting detectives recovered a journal belonging to Susan Powell from her place of employment . . . . Detective Maxwell reviewed this journal and advised your Affiant of the following information. . . . Susan articulates when she was 19 years of age she was engaged to Joshua Powell. This journal also contains writings from Susan Powell describing marital discord between her and Joshua Powell from 2005 through and to her last entry on October 26, 2009.
>
> Detective Maxwell described to your Affiant that . . . Joshua Powell and Steven Powell appeared on the NBC Today Show. The following facts were broadcasted on national television. Joshua and Steven Powell admitted to possessing 2000 pages of journal entries belonging to Susan Powell.
>
> Steven Powell has announced to the media the importance of these journals to the investigation because Susan Powell describes her relationships with males prior to Joshua Powell; her sexual[] fantasies, and it shows how unstable Susan Powell really is. Steven Powell also announced that he and Joshua Powell plan on sharing/releasing more journal entries in the coming weeks using the susanpowell.org website. . . . The statement that they plan on releasing more journal entries leads your Affiant to believe that they have, and are in the act of, or will be scanning and digitally storing additional copies of Susan Powell's journals on their computers and or digital media devices.

CP at 58-60.

B.  *Search of Powell's House, Seizure of the Computer Disk, and CrR 3.6 Motion*

The warrant to search Powell's house and seize Susan's journals was issued and the police searched Powell's house. During the search, the police seized a computer disk from Powell's bedroom, and later searched its contents. The disk contained photographic images of female minors bathing and using the bathroom. Some of these images zoomed in on the minors'

genitalia and breasts, covered and uncovered. The images were photographed from Powell's bedroom, through the window of a neighboring house.

Based on these images, the State charged Powell with fourteen counts of voyeurism[5] and one count of second degree possession of depictions of a minor engaged in sexually explicit conduct.[6] In the State's declaration for a determination of probable cause for the charges, the State alleged that the police found images of unclothed minors bathing and using the bathroom in Powell's home, and that these images were "stored with . . . images of Steven Powell himself [that] are sexual in nature and include images of him naked, images of his genitals, and images of him masturbating." CP at 11.

Powell made a CrR 3.6 motion to suppress the images on grounds that the search warrant was issued without probable cause. At the motion hearing, the attorneys argued the motion's merits, but did not present testimony or additional evidence. The trial court ruled that the affidavit established probable cause to issue the search warrant, and denied Powell's CrR 3.6 motion. The trial court did not enter written findings or conclusions.

C.    *Powell's Knapstad Motion*

Powell made a *Knapstad* motion to dismiss the charge of second degree possession of depictions of a minor engaged in sexually explicit conduct. Citing this court's pre-2010 interpretations of former RCW 9.68A.011(3)'s definition of "sexually explicit conduct," Powell argued that the minors in the images were not engaged in sexually explicit conduct. The State argued that the legislature's 2010 amendment to the definition of sexually explicit conduct

---

[5] RCW 9A.44.115.

[6] RCW 9.68A.070(2).

4

expanded the definition to encompass the conduct depicted in the images. Based upon our pre-2010 interpretations of the statutory definition of sexually explicit conduct, the trial court dismissed the charge.

D.    *Convictions and Appeal*

The jury convicted Powell of 14 counts of voyeurism, two of which the trial court vacated on double jeopardy grounds. Powell appeals the trial court's denial of his CrR 3.6 motion. The State cross appeals the trial court's *Knapstad* dismissal of the charge of second degree possession of depictions of a minor engaged in sexually explicit conduct.

ANALYSIS

I. FINDINGS AND CONCLUSIONS ON POWELL'S CrR 3.6 MOTION

Powell argues that the trial court erred by failing to enter written findings of fact and conclusions of law upon dismissing his CrR 3.6 motion. The State argues that CrR 3.6 did not require the trial court to enter written findings and conclusions because it did not conduct an evidentiary hearing. We agree with the State.

We review a court rule's construction de novo. *State v. Robinson*, 153 Wn.2d 689, 693, 107 P.3d 90 (2005). CrR 3.6 states:

> (a) **Pleadings.** Motions to suppress . . . shall be in writing supported by an affidavit or document . . . . The court shall determine whether an evidentiary hearing is required based upon the moving papers.
> (b) **Hearing.** If an evidentiary hearing is conducted, at its conclusion the court shall enter written findings of fact and conclusions of law.

Under CrR 3.6(b), the trial court is required to enter written findings and conclusions only if the trial court decided to hold an evidentiary hearing on the CrR 3.6 motion.

Here, the trial court did not hold an evidentiary hearing. The CrR 3.6 hearing was limited to argument, and did not involve the admission or consideration of evidence. Because the trial court did not conduct an evidentiary hearing on Powell's CrR 3.6 motion, it did not violate CrR 3.6(b) by not entering written findings of fact and conclusions of law.

## II. PROBABLE CAUSE FOR SEARCH WARRANT

Powell next argues that the affidavit supporting the search warrant did not establish probable cause because the affidavit failed to establish a nexus between criminal activity (Susan's kidnapping and murder) and the items to be seized (Susan's journals). We disagree.

A. *Standard of Review*

We review de novo the trial court's legal conclusion of whether evidence meets the probable cause standard. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). But our de novo review gives great deference to the issuing judge's assessment of probable cause and resolves any doubts in favor of the search warrant's validity. *State v. Chenoweth*, 160 Wn.2d 454, 477, 158 P.3d 595 (2007). The issuing judge "is entitled to make reasonable inferences from the facts and circumstances set out in the affidavit." *State v. Maddox*, 152 Wn.2d 499, 505, 98 P.3d 1199 (2004).

A search warrant may be issued only if the affidavit shows probable cause. *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). To establish probable cause, the affidavit supporting the search warrant must "set[] forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched." *Thein*, 138 Wn.2d at 140. The affidavit must establish "'a nexus between criminal activity and the item to be seized, and also a

nexus between the item to be seized and the place to be searched.'" *Thein*, 138 Wn.2d at 140 (quoting *State v. Goble*, 88 Wn. App. 503, 509, 945 P.2d 263 (1997)). When reviewing the issuing judge's decision to issue a search warrant, our review is limited to the four corners of the affidavit. *Neth*, 165 Wn.2d at 182.

Powell does not challenge that the affidavit (1) set forth facts and circumstances sufficient to establish a reasonable inference that Joshua was probably involved in Susan's kidnapping and murder, and (2) established a nexus between the items to be seized and the place to be searched. The affidavit indisputably accomplished both tasks. Thus, the singular issue before us is whether the affidavit established a nexus between criminal activity and the items to be seized.

B.     *Nexus Between Susan's Kidnapping and Murder and Susan's Journals*

Powell argues that the affidavit failed to establish a nexus between Susan's kidnapping and murder and Susan's journals. We disagree for three reasons.

First, the affidavit stated that the one journal in police custody discussed Susan's marital problems with Joshua, who was a person of interest in Susan's kidnapping and murder. Powell and Joshua had admitted to possessing other journal entries consisting of over 2,000 pages. The police did not know the dates Susan wrote the pages of journal entries in Powell and Joshua's custody, but they knew that Powell had announced that these entries were important as to the investigation of Susan's disappearance. These facts establish a reasonable inference that Susan's journals would have provided further information as to the relationship problems between Susan and Joshua, a person of interest in Susan's kidnapping and murder.

Second, the affidavit stated that Powell announced to the media that Susan's journals provided information as to Susan's state of mind. Information about Susan's state of mind would have provided critical evidence explaining the circumstances of Susan's disappearance, and whether those circumstances constitute kidnapping and murder.

Third, Powell announced to the media that Susan's journals discussed her prior romantic relationships. Information about Susan's prior romantic relationships would have assisted the police in determining the existence of any additional persons of interest involved in Susan's kidnapping and murder.

The affidavit established a nexus between criminal activity (Susan's kidnapping and murder) and the items to be seized (Susan's journals). Thus, we affirm the trial court's denial of Powell's CrR 3.6 motion.

### III. CROSS APPEAL: DISMISSAL OF CHARGES

The State argues that the trial court erroneously applied an outdated statutory definition of sexually explicit conduct to dismiss the charge of second degree possession of depictions of a minor engaged in sexually explicit conduct under *Knapstad*. We agree.

The trial court may dismiss a charge without prejudice on a *Knapstad* motion when the State's pleadings fail to support a prima facie showing of all the elements of the crime charged. *State v. Snedden*, 112 Wn. App. 122, 127, 47 P.3d 184 (2002) (citing *State v. Knapstad*, 107 Wn.2d 346, 352, 729 P.2d 48 (1986)). We review a trial court's *Knapstad* dismissal de novo, viewing the facts and all reasonable inferences from those facts in the light most favorable to the State. *State v. O'Meara*, 143 Wn. App. 638, 642, 180 P.3d 196 (2008).

We review issues involving statutory interpretation de novo and we interpret statutes to give effect to the legislature's intent. *State v. Bunker*, 169 Wn.2d 571, 577-78, 238 P.3d 487 (2010). When interpreting a statute, we first examine the statute's plain meaning. *Bunker*, 169 Wn.2d at 578. We generally give all statutory language effect so that no portion is rendered meaningless or superfluous. *State v. Roggenkamp*, 153 Wn.2d 614, 624, 106 P.3d 196 (2005).

RCW 9.68A.070(2)(a) states:

A person commits the crime of possession of depictions of a minor engaged in sexually explicit conduct in the second degree when he or she knowingly possesses any visual or printed matter depicting a minor engaged in sexually explicit conduct.

Former RCW 9.68A.011(3) provided the definition of sexually explicit conduct that applied to RCW 9.68A.070(2)(a). This definition provided seven categories of sexually explicit conduct. Former RCW 9.68A.011(3)(a)–(g). The category considered by the trial court was codified at former RCW 9.68A.011(3):

Sexually explicit conduct means actual or simulated:
. . . ;
(e) Exhibition of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor, for the purpose of sexual stimulation of the viewer.

We interpreted former RCW 9.68A.011(3)(e) in *State v. Grannis*, 84 Wn. App. 546, 930 P.2d 327, *review denied* 133 Wn.2d 1018 (1997). In *Grannis*, we held that for a minor within a depiction to be engaged in sexually explicit conduct under former RCW 9.68A.011(3)(e), either the minor whose conduct created the exhibition, or one who initiated, contributed to, or influenced that minor's conduct, had to have the purpose of sexually stimulating a viewer:

By itself, an exhibition is inanimate and without any purpose of its own. Necessarily, then, its purpose is the purpose of the person or persons who initiate, contribute to, or otherwise influence its occurrence. The initiator or contributor

need not be the accused or the minor whose conduct is at issue. Whoever the initiator or contributor is, however, his or her purpose must be to sexually stimulate a viewer. If his or her purpose is different, the conduct will not be sexually explicit by virtue of [former] RCW 9.68A.011(3)(e).

84 Wn. App. at 549-50 (footnotes omitted). This court further explained:

Here, [the count] is based on photographs showing the conduct of minor girls on a playground, and the conduct of one minor girl taking a bath. *It is obvious and undisputed that none of the girls had a purpose of sexually stimulating a viewer, and there is no evidence that Grannis initiated, contributed to, or in any way influenced the girls' conduct.* Thus, the evidence does not show an exhibition of the genitals or breasts for the purpose of sexually stimulating a viewer, or that the girls engaged in sexually explicit conduct within the meaning of [former] RCW 9.68A.011(3).

Nothing said herein means that the Legislature could or could not criminalize conduct of the sort at issue in this case. We hold only that it did not do so.

84 Wn. App. at 551-52 (emphasis added) (footnotes omitted). In *State v. Whipple*, we reaffirmed the holding in *Grannis* on very similar facts. 144 Wn. App. 654, 659-60, 183 P.3d 1105 (2008)).

In 2010, following *Grannis* and *Whipple*, the legislature passed ENGROSSED SUBSTITUTE H.B. 2424, 61st Leg., Reg. Sess. (Wash. 2010), which amended former RCW 9.68A.011(3)'s definition of sexually explicit conduct:

(((3))) (4) "Sexually explicit conduct" means actual or simulated:
. . . ;
(e) ~~Exhibition of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor, for the purpose of sexual stimulation of the viewer;~~
(f))) . . . ;
(f) *Depiction* of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor, for the purpose of sexual stimulation of the viewer. *For the purposes of this subsection (4)(f), it is not necessary that the minor know that he or she is participating in the described conduct, or any aspect of it.*

(Emphasis added.)

10

The legislature's 2010 amendment to former RCW 9.68A.011(3)'s definition of sexually explicit conduct superseded *Grannis* and its progeny, by using "depiction" in place of "exhibition." Following this amendment, RCW 9.68A.011(4)(f)'s plain meaning is that the person who creates the depiction, rather than the person who creates the exhibition that is depicted, must have the "purpose of sexual stimulation of the viewer." Stated another way, the creator of the "exhibition that is depicted" is the minor or one who initiates, contributes to, or influences the minor's conduct, but the creator of the "depiction" is the person who creates the image, such as a photographer.

RCW 9.68A.011(4)(f) lends further support to this interpretation with the added language stating that "it is not necessary that the minor know that he or she is participating in the described conduct, or any aspect of it." The plain meaning of this language shows that the legislature intended to extend criminal liability to those who possess depictions made by secretly recording minors without their knowledge.[7]

Here, a State pleading, namely the declaration for determination of probable cause for the charges against Powell, states that the police found images in Powell's home of unclothed minors bathing and using the bathroom, and that these images were "stored with . . . images of Steven Powell himself [that] are sexual in nature and include images of him naked, images of his genitals, and images of him masturbating." CP at 11. Viewing the facts and all reasonable inferences from those facts in the light most favorable to the State, this pleading supports a prima facie showing of all the elements of second degree possession of depictions of a minor engaged

---

[7] Powell argues that this interpretation will unconstitutionally punish the sexual thoughts of the possessor of a depiction of an unclothed child, regardless of how "innocent" the depiction. Powell's argument is based on the inaccurate premise that the purpose of the possessor controls. To the contrary, the purpose of the depiction's creator controls.

11

in sexually explicit conduct. The State's pleadings support a prima facie showing that Powell, the creator of the depictions in Powell's possession, had the purpose of sexual stimulation of the viewer (Powell). Thus, we reverse the trial court's *Knapstad* dismissal of the charge of second degree possession of a minor engaged in sexually explicit conduct and remand for reinstatement of this charge and further proceedings.

    Affirmed in part, reversed in part, and remanded.

_____
Worswick, J.

We concur:

_____
Hunt, P.J.

_____
Melnick, J.