# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46818-2-II |
| Appellant, | |
| v. | |
| MICHAEL FREDERICK WELLS, | UNPUBLISHED OPINION |
| Respondent. | |

JOHANSON, C.J. — The State of Washington appeals the trial court orders granting Michael Wells's motion to suppress the evidence obtained during the search of his vehicle and dismissing the case for insufficient evidence. The State argues that the trial court erred by excluding the drug dog's alerts when determining whether probable cause supported the search warrant and by concluding that the circumstances did not establish probable cause to issue the search warrant. We hold that even without considering the drug dog's alerts, the search warrant affidavit was sufficient to establish probable cause. We also reject Wells's argument that we should affirm on alternative grounds because the officers unlawfully expanded the scope of the search to allow for the drug dog's search, and we hold that Wells's claim that there was a material omission in the search warrant affidavit has no merit. Accordingly, we reverse the trial court and remand for further proceedings.

FACTS

I. BACKGROUND

On September 10, 2013, law enforcement officers were conducting a surveillance operation focused on Brian Valdez after a confidential informant had informed the police that Valdez was selling methamphetamine. While surveilling Valdez, the officers observed him park at a donut shop. Wells then arrived and parked his vehicle next to Valdez. Valdez got into Wells's vehicle. After about 20 minutes, two females came out of the donut shop. Valdez returned to his vehicle, and Wells left with one of the women.[1]

An officer followed Wells to a Goodwill Store. Wells and his passenger, Nora Thomas, spent more than an hour in the store. When Wells and Thomas eventually left the store, the officer followed them and stopped the vehicle after observing Wells's vehicle swerving and its rear tire hitting a curb. Upon stopping the vehicle, the officer observed that Thomas was not wearing her seatbelt and then determined she had an outstanding warrant "stemming from a Possession of a Controlled Substance charge." Clerk's Papers (CP) at 17. Thomas also had a prior conviction for possession of a controlled substance. The officer arrested Thomas on the warrant, searched her purse, and found what appeared to be a methamphetamine pipe and a small amount of methamphetamine inside the purse.

Another officer observed "a small metal safe/lockbox" on the vehicle's floor in front of the driver's seat and a zippered bank pouch wedged between the driver's seat and the center console. CP at 17. When the officers questioned Wells, he admitted there was a small amount of marijuana,

---

[1] In the search warrant affidavit, the officers did not describe observing Valdez and Wells exchanging any items.

about the size of a quarter, in the vehicle. The officers learned that Wells also had at least four prior convictions for possession of controlled substances. They then requested a K-9 unit to conduct a sniff of the vehicle.

The K-9 officer arrived with his dog Ory, who was trained prior to the effective date of Initiative 502.[2] Ory was trained to alert to "methamphetamine, crack cocaine, cocaine, marijuana[,] and heroin," and he was capable of detecting "minuscule amounts" of these substances. CP at 19. Ory could not, however, communicate which substance he detected or how much of the substance was present. Ory alerted to "the passenger side door handle, the bottom seam of the driver's side door near the rear of the door, and the bottom front portion of the passenger door seam." CP at 20.

Based on the facts described above, the officers obtained a search warrant allowing them to search the vehicle. The officers found 1.6 grams of marijuana by the driver's seat, methamphetamine and heroin in the trunk, a scale, and $12,030.

## II. PROCEDURE

The State charged Wells with two counts of possession of a controlled substance with intent to deliver (methamphetamine and heroin). Wells moved to suppress the evidence found during the vehicle search. He argued that (1) the initial stop was pretextual, (2) the officers unlawfully exceeded the scope of the traffic stop, (3) the dog sniff could not have led to probable cause because

---

[2] Initiative 502, effective December 6, 2012, legalized marijuana for recreational use, thus decriminalizing the possession of small amounts of marijuana for individuals over 21 years of age. LAWS OF 2013, ch. 3, § 20; *see also* RCW 69.50.4013(3). Wells could legally possess one ounce of useable marijuana. RCW 69.50.4013(3), .360(3)(a).

3

Ory could have smelled the drugs found on Thomas or the legal marijuana Wells said was in the

vehicle, and (4) there were deliberate omissions in the search warrant affidavit.[3]

The trial court entered a written order granting the motion to suppress. In the written order

granting the motion, the trial court stated,

> Ory's positive alert when he sniffed the car does not establish probable
> cause. "Generally an 'alert' by a trained drug dog is sufficient to establish probable
> cause for the presence of a controlled substance." *State v. Jackson*, 82 Wn. App.
> 594, 606[, 918 P.2d 945] (1996). However, "Ory was trained and certified prior to
> the effective date of Initiative 502. Ory is trained in the detection of
> methamphetamine, crack cocaine, cocaine, marijuana, and heroin. Ory cannot
> communicate which of these substances he has detected." *Search Warrant Affidavit*
> at 7. Further the dog cannot determine the quantity of any controlled substance.
> Thus, *a positive alert does not show probable cause absent evidence to suggest the
> dog alerted to something other than the marijuana in the car, or the
> methamphetamine that was already found in Ms. Thomas'[s] purse*. In contrast to
> the nexus established in *Maddox*[4] by the sale of methamphetamine to a
> confidential informant inside the defendant's home, no factual information in the
> affidavit shows a nexus between criminal activity and Mr. Wells'[s] vehicle. The
> only criminal activity connected to the defendant was erratic driving. Without a
> factual nexus, the evidence obtained pursuant to the warrant must be suppressed.
> . . . .
> In this case, *dog's alert must be excluded from a review of probable cause*
> since, as stated above, Ory cannot communicate whether he has detected marijuana
> or a different drug, and no other evidence suggests what substance he alerted to.

---

[3] Specifically, Wells asserted that the affidavit deliberately omitted the following information,
which was present in one of the officers' written reports:
> Nora Thomas came out of the [Goodwill] store and started walking around the
> parking lot. A vehicle pulled up to Nora and she got into the passenger side of the
> vehicle. This vehicle was parked on the north area of the parking lot. Less than 5
> minutes later Nora got out of the vehicle and went back into the store and the vehicle
> left.

CP at 11 (emphasis omitted). Wells argued that this information would have shown that there was
"no nexus between the defendant and Nora Thomas's activities in the Goodwill parking lot," that
she was "acting independently of the defendant," and that there was no connection between the
drugs in her purse and the vehicle. CP at 11.

[4] *State v. Maddox*, 152 Wn.2d 499, 505, 98 P.3d 1199 (2004).

> The other facts in this case do not show a nexus connecting Mr. Wells'[s] vehicle to criminal activity.

CP at 67-69 (emphasis added).

The trial court also issued written findings of fact and conclusions of law. The written findings of fact are described in the facts section above and were consistent with the facts stated in the search warrant affidavit. In its written conclusions of law, the trial court stated, inter alia, that Ory's positive alert did not establish probable cause because he was also trained to alert to marijuana, a legal substance, and could not have determined the quantity of marijuana and that the suspicious activity alone does not rise to the level of probable cause. The trial court then concluded that because the evidence was suppressed, there was insufficient evidence to go to trial and dismissed the case for insufficient evidence.

The trial court also concluded that the stop was not pretextual. Although there was discussion during the suppression hearing about whether the officers had lawfully expanded the scope of the search to allow the dog sniff, the trial court did not enter any findings of fact or conclusions of law addressing this issue. The trial court did not reach the material omission argument.[5]

The State appeals.

---

[5] Wells raised this issue in his motion to dismiss, but the trial court did not address this issue. We address it here in the interest of judicial economy.

ANALYSIS

I. LEGAL STANDARDS

"We review de novo the trial court's legal conclusion of whether evidence meets the probable cause standard." *State v. Powell*, 181 Wn. App. 716, 723, 326 P.3d 859 (citing *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008)), *review denied*, 181 Wn.2d 1011 (2014). Although we apply a de novo review standard, we also give great deference to the issuing judge's assessment of probable cause and resolve any doubts in favor of the search warrant's validity. *Powell*, 181 Wn. App. at 723 (citing *State v. Chenoweth*, 160 Wn.2d 454, 477, 158 P.3d 595 (2007)). The issuing judge "is entitled to make reasonable inferences from the facts and circumstances set out in the affidavit." *State v. Maddox*, 152 Wn.2d 499, 505, 98 P.3d 1199 (2004). When reviewing the issuing judge's decision to issue a search warrant, our review is limited to the four corners of the affidavit. *Neth*, 165 Wn.2d at 182.

A judge may issue a search warrant only if the affidavit establishes probable cause. *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). To establish probable cause, the affidavit supporting the search warrant must "set[ ] forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched." *Thein*, 138 Wn.2d at 140. The affidavit must establish "'a nexus between criminal activity and the item to be seized, and also a nexus between the item to be seized and the place to be searched.'" *Thein*, 138 Wn.2d at 140 (quoting *State v. Goble*, 88 Wn. App. 503, 509, 945 P.2d 263 (1997)).

## II. PROBABLE CAUSE

The State argues that the trial court erred in concluding that the search warrant affidavit was not sufficient to establish probable cause.[6] Even excluding the dog-sniff evidence,[7] we agree.

The affidavit showed that (1) Wells had had recent contact with an individual suspected of selling methamphetamine, although the search warrant affidavit did not suggest that the surveillance team observed any exchange of items between Wells and Valdez, (2) Wells admitted that there was a small amount of marijuana in the vehicle, (3) Wells had several prior convictions for unlawful possession of a controlled substance, (4) Thomas's purse contained a small amount of methamphetamine and a methamphetamine pipe, (5) Thomas was arrested on an outstanding warrant related to a drug offense, (6) Thomas had a prior conviction for unlawful possession of a controlled substance, and (7) the officers observed a small metal safe on the floor in front of the driver's seat and a zippered bank pouch between the driver's seat and the center console.

---

[6] Specifically, the State argues that the trial court (1) failed to accord the issuing magistrate the proper level of deference, (2) reviewed the search warrant in a hyper-technical manner by reviewing whether each individual fact in isolation was sufficient to establish probable cause rather than considering the affidavit as a whole, and (3) improperly resolved doubts concerning the existence of probable cause against the search warrant's validity. But because we review the trial court's assessment of probable cause to issue a search warrant issue de novo, we do not address these specific allegations. *Neth*, 165 Wn.2d at 182.

[7] Because we hold that the search warrant affidavit was adequate without considering the dog sniff and because we review the trial court's assessment of probable cause de novo, we need not address whether the trial court should have considered the dog-sniff evidence. Furthermore, although Wells asserts that the trial court refused to consider the dog sniff, the trial court's conclusion of law 4 and its statements in its order granting the motion to suppress demonstrate that the trial court considered this information—it merely determined that it did not establish probable cause. *See* CP at 68 ("[A] positive alert does not show probable cause absent evidence to suggest the dog alerted to something other than the marijuana in the car, or the methamphetamine that was already found in Ms. Thomas'[s] purse."); CP at 74 ("K-9 dog Ory's positive alert when he sniffed the vehicle does not establish probable cause.).

The existence of the prior convictions for unlawful possession of a controlled substance, Wells's admitted possession of marijuana, and Thomas's possession of methamphetamine and a methamphetamine pipe demonstrated that Wells and Thomas were likely drug users. *State v. Vickers*, 148 Wn.2d 91, 111 n.51, 59 P.3d 58 (2002) ("Prior convictions may be used as one *factor* when determining probable cause. *See State v. Clark*, 143 Wn.2d 731, 749, 24 P.3d 1006 (2001)) (emphasis added). But the fact that Wells and Thomas were likely drug users does not, alone, establish a nexus between the item to be seized (controlled substances) and the place to be searched (Wells's vehicle).

However, several factors supported a finding of probable cause to believe that Wells's vehicle contained illegal controlled substances: observing Wells with a suspected drug dealer, Wells's admission that there was marijuana in his vehicle, the small metal safe on the floor by the driver's seat, the zippered bank pouch near the driver's seat, and Thomas's possession of drugs while inside the vehicle. Although no single factor is sufficient, when we consider the factors as a whole, we are convinced probable cause exists. Given our deferential treatment of the issuing magistrate's decision and that we resolve any doubts in favor of the search warrant's validity,[8] we hold that these factors are sufficient to establish a reasonable inference that Wells or Thomas were probably involved in criminal activity and that evidence of this activity could be found in the vehicle. Accordingly, the trial court erred in concluding that the search warrant affidavit did not establish probable cause.

---

[8] *Powell*, 181 Wn. App. at 723.

III. WELLS'S ALTERNATIVE GROUNDS ARGUMENT

Wells argues that we should affirm the trial court on alternative grounds. Specifically, he argues that the detention of the vehicle to allow for the dog sniff violated his constitutional rights because it exceeded the time needed to issue the infraction. Because we hold that there was sufficient evidence to establish probable cause to search the vehicle without reference to the dog sniff, this argument does not show that the magistrate erred in issuing the warrant.

IV. DELIBERATE OMISSION ISSUE

Finally, even though the trial court did not reach Wells's deliberate omission argument, we do so here in the interest of judicial economy. Even presuming that Wells showed that the officers deliberately or recklessly omitted the information about Thomas engaging in suspicious behavior outside the Goodwill store while Wells remained in the store, this argument has no merit.

If the issue is a deliberate or reckless omission in a search warrant affidavit, "those omitted matters are considered as part of the affidavit." *State v. Garrison*, 118 Wn.2d 870, 873, 827 P.2d 1388 (1992). "If the affidavit with the matter . . . inserted . . . remains sufficient to support a finding of probable cause, the suppression motion fails." *Garrison*, 118 Wn.2d at 873.

Here, although Thomas's behavior outside the Goodwill store did not directly implicate Wells, it did provide additional evidence that Thomas may have been engaged in drug-related activities during the time she was with Wells, which increases the probability that there would be drug evidence in Wells's vehicle after they left the Goodwill. Because this additional fact would increase, rather than decrease, the likelihood that evidence of a crime would be found in Wells's vehicle, Wells's omission argument has no merit.

No. 46818-2-II

Accordingly, we reverse the trial court's suppression order and remand for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

<br>

_Johanson, C.J._

JOHANSON, C.J.

We concur:

_Worswick, J._

WORSWICK, J.

_Maxa, J._

MAXA, J.