# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54843-7-II |
| Respondent, | |
| v. | |
| WAYDE GORDON RICE, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, C.J. — Wayde G. Rice appeals his convictions for first and second degree possession of depictions of a minor engaged in sexually explicit conduct. Rice argues that there was insufficient evidence to prove that he knowingly possessed the depictions for the purpose of sexual stimulation and that the trial court violated his right to present a defense by excluding his expert testimony on Post Traumatic Stress Disorder (PTSD) and its effects on Rice. In a Statement of Additional Grounds (SAG),[1] Rice again claims that the trial court erred by excluding his expert testimony and also claims that the police tampered with evidence that was involved in his case.

We hold that Rice's insufficient evidence claim fails because whether Rice possessed the depictions for the purpose of sexual stimulation is not an element of the charged crimes. We also hold that the trial court did not violate Rice's right to present a defense because the expert testimony on PTSD was irrelevant and Rice was still able to present his defense without the expert

---

[1] A defendant may file a statement of additional grounds "to identify and discuss those matters related to the decision under review that the defendant believes have not been adequately addressed" on direct appeal by their counsel. RAP 10.10(a). Here, Rice filed six SAGs.

testimony. Further, we do not address the claims in the SAGs because whether the trial court erred in excluding the expert testimony is addressed in Rice's direct appeal, and the issue of whether the police tampered with the evidence is raised for the first time on appeal and addressing the issue would require a review of facts outside the record on direct appeal. Accordingly, we affirm Rice's convictions.

FACTS

The Internet Crimes Against Children (ICAC) unit executed a search warrant on Rice's home in Lewis County and found child pornography. As a result of the search, the State ultimately charged Rice with six counts of first degree possession of depictions of a minor engaged in sexually explicit conduct and four counts of second degree possession of depictions of a minor engaged in sexually explicit conduct.

Prior to trial, the State filed a motion to exclude the expert testimony of James Manley, Ph.D. The State argued that the expert testimony was not relevant because Rice did not plead diminished capacity. In response, Rice conceded that he did not raise the defense of diminished capacity, to which the expert testimony would be relevant. However, Rice argued the expert testimony was also relevant to explain Rice's conduct.

The trial court granted the State's motion. Specifically, the trial court stated that the expert testimony was not relevant because it did not "bear on any of the elements of the crimes charged." Verbatim Report of Proceedings (VRP) (Mar. 3, 2020) at 18.

Rice's case proceeded to a jury trial. Detective Daljit Gill testified that the ICAC unit obtained the search warrant because Rice "had been communicating with a person that was under

2

investigation, and that's why we had also looked into him." VRP (Mar. 4, 2020) at 166. In the search, police found child pornography on devices that belonged to Rice.

Gill further testified that she interviewed Rice at the scene. When Gill confronted Rice about the child pornography found on his devices, Rice told Gill that he had forgotten about them, but he was aware that he had the photos. Rice also told Gill that Rice was sexually attracted to children and had sexual fantasies about children.

Rice testified on his own behalf. Rice testified regarding the events and life experiences he believed led to his arrest. Specifically, Rice experienced a lot of anxiety, which started when he "lost [his] best friend" in third grade in a plane crash. VRP (Mar. 4, 2020) at 154. Further, Rice is a retired firefighter and paramedic. After retiring, Rice had nightmares about his work and did not sleep. After some time, he felt "[t]he need to do something, the need to be something bigger than just retirement." VRP (Mar. 4, 2020) at 146. Rice decided that he wanted to "work in Europe" and "fight terrorism, international terrorism." VRP (Mar. 4, 2020) at 147.

When Rice was unable to fight terrorism in Europe, "[he] told [him]self [he] was a federal agent." VRP (Mar. 4, 2020) at 149. Rice testified, "Then these pictures here are what I was trying to do, is use what I learned with this to go and get some bad guys online." VRP (Mar. 4, 2020) at 149. By bad guys, Rice meant "[s]exual offenders." VRP (Mar. 4, 2020) at 150. Rice testified that he did not use the photographs for "any personal sexual stimulation." VRP (Mar. 4, 2020) at 150.

The jury found Rice guilty of six counts of first degree possession of depictions of a minor engaged in sexually explicit conduct and three counts of second degree possession of depictions of a minor engaged in sexually explicit conduct. The jury also found Rice not guilty of one count

3

No. 54843-7-II

of second degree possession of depictions of a minor engaged in sexually explicit conduct. The trial court sentenced Rice to 102 months of confinement and 18 months of community custody.

Rice appeals.

ANALYSIS

A.    SUFFICIENCY OF THE EVIDENCE

Rice argues that there was insufficient evidence to support his convictions of first and second degree possession of depictions of a minor engaged in sexually explicit conduct because there is no evidence he possessed the child pornography for purposes of sexual stimulation. We disagree.

1.    Legal Principles

Evidence is sufficient to support a conviction if any rational trier of fact can find the essential elements of the crime beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). The evidence must be viewed in the light most favorable to the State and interpreted most strongly against the defendant. *Id.* at 265-66. Circumstantial and direct evidence are equally reliable. *Id.* at 266. "However, inferences based on circumstantial evidence must be reasonable and cannot be based on speculation." *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013). A claim of insufficiency of evidence admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. *Id.* at 265-66.

2.    Possession Of Depictions Of A Minor Engaged In Sexually Explicit Conduct

A person is guilty of first degree possession of depictions of a minor engaged in sexually explicit conduct "when he or she knowingly possesses a visual or printed matter depicting a minor

4

engaged in sexually explicit conduct as defined in RCW 9.68A.011(4)(a) through (e)." Former

RCW 9.68A.070(1)(a) (2010). "Sexually explicit conduct" is defined as actual or simulated

> (a) Sexual intercourse, including genital-genital, oral-genital, anal-genital,
> or oral-anal, whether between persons of the same or opposite sex or between
> humans and animals;
> (b) Penetration of the vagina or rectum by any object;
> (c) Masturbation;
> (d) Sadomasochistic abuse; [and]
> (e) Defecation or urination for the purpose of sexual stimulation of the viewer.

RCW 9.68A.011(4).

A person is guilty of second degree possession of depictions of a minor engaged in sexually

explicit conduct "when he or she knowingly possesses any visual or printed matter depicting a

minor engaged in sexually explicit conduct as defined in RCW 9.68A.011(4)(f) or (g)." Former

RCW 9.68A.070(2)(a) (2010). "Sexually explicit conduct" is defined in this instance as actual or

simulated

> (f) Depiction of the genitals or unclothed pubic or rectal areas of any minor,
> or the unclothed breast of a female minor, for the purpose of sexual stimulation of
> the viewer. For the purposes of this subsection (4)(f), it is not necessary that the
> minor know that he or she is participating in the described conduct, or any aspect
> of it; and
> (g) Touching of a person's clothed or unclothed genitals, pubic area,
> buttocks, or breast area for the purpose of sexual stimulation of the viewer.

RCW 9.68A.011(4).

Only RCW 9.68A.011(4)(e), (f), and (g) include the language "purpose of sexual

stimulation of the viewer." Our Supreme Court has interpreted the clause "purpose of sexual

stimulation of the viewer" in RCW 9.68A.011(4)(f), which is identical to the language in RCW

9.68A.011(4)(e) and (g), to mean that "the person who creates the depiction . . . must have the

'purpose of sexual stimulation of the viewer.'" *State v. Powell*, 181 Wn. App. 716, 728, 326 P.3d

859 (2014). There is no basis to interpret the clause "purpose of sexual stimulation of the viewer" found in RCW 9.68A.011(4)(f) differently for the identical clauses found in RCW 9.68A.011(4)(e) and (g). Therefore, the State was not required to prove that Rice possessed the depictions for purposes of his own sexual stimulation because whether Rice possessed the depictions for the purpose of his own sexual stimulation is not an element of the charged crimes.

Moreover, the record does not support Rice's argument that "there is no independent evidence that he knowingly possessed these photos for purposes of sexual stimulation." Br. of Appellant at 18. Rice told Gill that he was sexually attracted to children and had sexual fantasies about children. Also, Rice testified that he had the depictions to "get some bad guys online," meaning "[s]exual offenders." VRP (Mar. 4, 2020) at 149-50. From this evidence, a rational trier of fact can reasonably infer that the depictions were for the purpose of sexual stimulation and that Rice possessed the depictions of minors engaged in sexually explicit conduct for the purpose of his own sexual stimulation. *See State v. Hai Minh Nguyen*, 191 Wn.2d 671, 685, 425 P.3d 847 (2018) (adopting the argument that "'sexually explicit and erotic materials exist almost entirely for the purposes of sexual stimulation and ideation'" (quoting record)).

On the record before us, a rational trier of fact could find beyond a reasonable doubt the essential elements of first and second degree possession of depictions on a minor engaged in sexually explicit conduct. Rice's insufficiency of the evidence claim fails.

B.      EXCLUSION OF EXPERT TESTIMONY

Rice argues that the trial court erred in excluding his expert's testimony on PTSD and its effects on Rice. Rice claims that the exclusion of this testimony "effectively denied [his] ability to present his defense." Br. of Appellant at 9. We disagree.

1.      Legal Principles

To determine whether the exclusion of evidence violates a defendant's constitutional right to present a defense, we engage in a two-part analysis. *State v. Arndt*, 194 Wn.2d 784, 797-98, 453 P.3d 696 (2019), *cert. denied*, 142 S. Ct. 726 (2021). First, we review the trial court's individual evidentiary rulings for an abuse of discretion. *Id.* at 797. Second, we review de novo whether the trial court's evidentiary rulings deprived the defendant of their right to present a defense. *Id.* at 798.

2.      Evidentiary Ruling

We review a trial court's evidentiary rulings for abuse of discretion. *State v. Clark*, 187 Wn.2d 641, 648, 389 P.3d 462 (2017). We defer to the trial court's rulings unless no reasonable person would adopt the trial court's ruling. *Id.* A trial court abuses discretion when its decision is manifestly unreasonable, or based on untenable grounds or untenable reasons. *Arndt*, 194 Wn.2d at 799.

Expert testimony is admissible "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." ER 702. Under ER 702 and the *Frye* test, expert testimony is admissible (1) when the witness qualifies as an expert, (2) where the scientific methodology

used by the expert is reliable, and (3) where the testimony will assist the trier of fact. *Frye v. U.S.*, 293 F. 1013, 1014, 54 App. D.C. 46, 34 A.L.R. 145 (D.C. Cir. 1923); *Arndt*, 194 Wn.2d at 799. Under ER 702, expert testimony will assist the trier of fact only if it is relevant.[2] *State v. Atsbeha*, 142 Wn.2d 904, 917-18, 16 P.3d 626 (2001).

Evidence is relevant if it makes the existence of a fact that is of consequence to the determination more or less probable. ER 401. Expert testimony regarding a defendant's inability to form the requisite mens rea due to a behavioral health disorder is only relevant where diminished capacity is raised and affirmatively pleaded before trial. *Clark*, 187 Wn.2d at 649.

Here, the trial court excluded Rice's expert testimony as irrelevant because it did not "bear on any of the elements of the crimes charged." VRP (Mar. 3, 2020) at 18. Rice argues that the expert testimony was relevant because it would have helped to explain Rice's actions or "'put into context' Mr. Rice's thought process." Br. of Appellant at 15. But Rice did not plead diminished capacity. Br. of Appellant at 14; PDF 17.

Rice also argues that "expert testimony is admissible for more purposes than just to be used as evidence in support of a mental defense." Br. of Appellant at 15. However, "[t]he label that trial counsel attaches to its proffered evidence cannot change the actual purpose for which the evidence is offered." *Clark*, 187 Wn.2d at 651. Rice sought to introduce expert testimony to dispute he had the requisite mens rea to commit the charged crimes, and even though Rice

---

[2] In his briefing, Rice discusses all three prongs. However, the State concedes that it never contested whether Manley was an expert or whether PTSD is generally accepted in the scientific community. Rather, "[t]he issue has always been relevance." Br. of Resp't at 12. Therefore, this opinion only addresses the issue of relevance.

attempted to admit the testimony under the guise that it would help explain his actions and thought process, such testimony was only relevant to a diminished capacity defense.

Further, Rice claims that the expert testimony was relevant to explain his actions. Specifically, Rice asserts that he did not possess the depictions for the purpose of sexual stimulation. However, as discussed above, whether the possessor had the depictions for the purpose of the possessor's own sexual stimulation is not an element of either first or second degree possession of depictions of a minor engaged in sexually explicit conduct. *See* Former RCW 9.68A.070(1)(a); RCW 9.68A.070(2)(a) (2010); *Powell*, 181 Wn. App. at 728. Therefore, Rice's proffered expert testimony is irrelevant because whether Rice possessed the depictions for the purpose of his own sexual stimulation does not "make the existence of any fact that is of consequence to the determination . . . more probable." ER 401. Thus, we hold that the trial court did not abuse its discretion when it excluded Rice's proffered expert testimony.

3. Constitutional Right To Present A Defense

In analyzing a defendant's Sixth Amendment right to present a defense, we balance the State's interest in excluding the evidence against the defendant's need to admit it. *Arndt*, 194 Wn.2d at 812. Evidence may be of such high probative value it negates any state interest to preclude its introduction. *Id.* Evidence is of extremely high probative value if, without it, a defendant could not present a defense. *Id.* at 813. A trial court does not violate the defendant's Sixth Amendment rights where an evidentiary ruling limits testimony but does not eliminate the defendant's entire defense. *Id.*

Here, the trial court excluded Rice's expert testimony regarding PTSD and the effects it had on Rice. Rice did not raise a diminished capacity defense. As stated above, Rice's expert

testimony regarding his inability to form the requisite mens rea due to a behavioral health disorder is only relevant to a diminished capacity defense. *See Clark*, 187 Wn.2d at 649.

Though Rice did not raise a diminished capacity defense, he argued the testimony was necessary to explain his "psychological condition" and explain his "conduct giving rise to the charges." Clerk's Papers at 40. However, Rice was still able to put forth his defense because he was able to testify that he had the depictions in order to catch sex offenders online. Further, Rice testified regarding his past traumas and mental state at the time he was arrested. Therefore, Rice was able to present his defense through his testimony regarding how his alleged psychological condition affected his conduct that gave rise to the charges.

The trial court did not abuse its discretion in excluding the expert's testimony nor did the trial court's exclusion of the testimony violate Rice's constitutional right to present a defense. Therefore, Rice's challenge fails.

STATEMENT OF ADDITIONAL GROUNDS[3]

A.    Expert Testimony

Rice claims that the trial court erred by excluding his expert's testimony. We only consider SAG claims that have not already been adequately addressed by counsel in Rice's direct appeal. RAP 10.10(a); *State v. Thompson*, 169 Wn. App. 436, 493, 290 P.3d 996 (2012), *review denied*, 176 Wn.2d 1023 (2013).

---

[3] In his multiple SAG filings, Rice repeatedly requests an "interview" with this court. SAG at 16, 28-29. However, this issue will not be addressed because we only consider the record on appeal and will not consider matters outside of the appellate record. *See State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995) (stating this court does not review matters outside the record on direct appeal). In the remainder of his SAG filings, Rice discusses many things, but he does not inform us "of the nature and occurrence of the alleged errors" as required by RAP 10.10(c).

Here, Rice's counsel raised the issue of whether the trial court erred by excluding his expert's testimony on direct appeal. Therefore, we do not address Rice's SAG claim challenging the trial court's exclusion of his expert's testimony.

B. Tampering With Evidence

Rice also claims that the police tampered with evidence in his case. We decline to review this claim.

"The appellate court may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). Further, we do not review matters outside the record on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995). Rather, issues involving facts outside the record are properly raised in a personal restraint petition, not a SAG. *State v. Calvin*, 176 Wn. App. 1, 26, 316 P.3d 496 (2013), *remanded on a specific issue*, 183 Wn.2d 1013 (2015).

Here, Rice did not raise the issue of whether the police tampered with evidence in his case to the trial court. Further, the record on appeal does not contain any facts that we would need in order to consider whether the police tampered with the evidence in this case. Therefore, we do not address this issue.

We affirm Rice's convictions.

No. 54843-7-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, C.J.

We concur:

Glasgow, J.

Veljacic, J.