# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE AUG 2 7 2015



_CHIEF JUSTICE_

This opinion was filed for record
at 8:00am on Aug. 27, 2015

Ronald R. Carpenter
Supreme Court Clerk

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 90926-1 |
| Petitioner, | |
| v. | EN BANC |
| JOSE FIGEROA MARTINES, | |
| Respondent. | Filed ___AUG 2 7 2015___ |

STEPHENS, J.—Jose Figeroa Martines was involved in a car accident. Pursuant to a warrant, a blood sample was extracted from Martines after an officer suspected he was driving while under the influence (DUI). The blood tests revealed a blood alcohol concentration (BAC) of about 0.061 and markers of two different central nervous system depressants. Martines was charged with felony DUI under RCW 46.61.502. He sought to suppress the blood test results showing the presence of drugs on the ground that there was no probable cause to show he was under the influence of drugs, as opposed to alcohol. The trial court denied Martines's motion, and a jury convicted him as charged.

The Court of Appeals reversed Martines's conviction. *State v. Figeroa Martines*, 182 Wn. App. 519, 331 P.3d 105 (2014). The court did not decide the probable cause question but held instead that the blood test was an unlawful warrantless search. The court reasoned that drawing blood and testing blood constitute separate searches, each of which requires particular authorization, and that the warrant here authorized only a blood draw. The State appealed, and we accepted review. 181 Wn.2d 1023, 339 P.3d 634 (2014). We also granted review of Martines's contingent issue: whether probable cause existed to test Martines's blood sample for drugs. *Id.*

We reverse the Court of Appeals and reinstate Martines's conviction. We hold that the warrant authorized the drawing and testing of Martines's blood for both alcohol and drugs based on probable cause to believe Martines had committed a DUI.

## FACTS AND PROCEDURAL HISTORY

The relevant facts are undisputed. On June 16, 2012, officers observed Martines driving his vehicle erratically on State Route 167. Martines's car veered into another car, swerved into the median, and rolled over. An off-duty Tukwila detective saw the collision and drove to the accident site. The detective observed that Martines was stumbling, had slurred speech, and smelled like beer. The detective, along with other witnesses, observed Martines crawl back into his vehicle, retrieve a bag, and throw it into a ditch. Martines later engaged in an

altercation with a passenger from the other car. A King County Sheriff's deputy arrived, and the deputy and the detective placed Martines in handcuffs.

A Washington State trooper arrived to the scene moments later, interviewed witnesses, and was debriefed by the detective. The trooper took custody of Martines and informed him he was under arrest for suspicion of DUI. The trooper observed Martines had red, bloodshot eyes and smelled of alcohol. Martines told the trooper he drank "'[o]ne Blue Moon'" beer that night. Verbatim Report of Proceedings (VRP) (Nov. 5, 2012) at 20. The trooper located a bag in a nearby ditch containing a Blue Moon cardboard six-pack container with only one unopened beer bottle. VRP (Nov. 8, 2012) at 107-08.

The trooper sought a search warrant to extract a blood sample from Martines at a local hospital. His affidavit for probable cause stated:

> A sample of Martines, Jose Figeroa's blood, if extracted within a reasonable period of time after he/she last operated, or was in physical control of, a motor vehicle, may be tested to determine his/her current blood alcohol level and to detect the presence of any drugs that may have impaired his/her ability to drive. . . .
> The Legislature has specifically authorized the use of search warrants for blood in cases in which the implied consent statute applies. *See* RCW 46.20.308(1) ("Neither consent nor this section precludes a police officer from obtaining a search warrant for a person's breath or blood."). . . .
> Therefore, I request authority to cause a sample of blood, consisting of one or more tubes to be extracted from the person of Martines, Jose Figeroa by a physician . . . .

Clerk's Papers (CP) at 97-99. The trooper obtained a warrant authorizing the "extract[ion]" of a blood sample from Martines. CP at 100-01. The warrant indicated probable cause existed to believe Martines's blood contained evidence of

the crime of DUI under RCW 46.61.502. The warrant did not include any express reference to testing of the blood sample.

Pursuant to the search warrant, a blood sample was drawn from Martines at a local hospital. The Washington State Patrol Toxicology Laboratory tested the sample for the presence of alcohol and drugs. The test results indicated Martines had a BAC of 0.061 and 0.062 at the time of the testing, which the toxicologist estimated would have been 0.121 two hours after the accident. Martines's blood also contained 0.05 milligrams per liter of diazepam, a central nervous depressant and active ingredient in Valium, and 0.03 milligrams per liter of nordiazepam, also a nervous system depressant and metabolite of diazepam. Martines had been previously convicted of vehicular assault while driving under the influence of an intoxicant, a predicate offense for felony DUI under RCW 46.51.502(6)(b)(ii). The State charged Martines with felony DUI.

Martines moved to suppress all evidence of drugs or drug testing. He argued there was no probable cause to test his blood sample for drugs because witnesses observed only signs of alcohol intoxication. The State objected, arguing that in a DUI context, testing seeks to determine the existence of an impairing substance, which may be alcohol, drugs, or a combination of both. Further, the State argued that once it obtains a blood sample through a lawful search, it may test the sample for anything it deems appropriate. The trial court denied Martines's motion. The court held that if probable cause exists to test for either alcohol or drugs, then probable cause exists to test for both. The evidence of alcohol and drugs in

Martines's blood was admitted at trial, and the jury found Martines guilty of felony DUI.

On appeal, Martines raised a new issue of constitutional magnitude, arguing that the blood test constituted a separate intrusion requiring specific authorization. He retreated from his earlier concession that the warrant authorized the blood test for alcohol. *See* CP at 5-6; *see also* VRP (Nov. 5, 2012) at 31 (Martines's counsel stated during the suppression hearing, "I'm seeking to exclude just evidence of drug testing."); Wash. Court of Appeals oral argument, *State v. Figeroa Martines*, No. 64663-7-I (Apr. 15, 2014), at 0 min., 48 sec., https://www. courts.wa.gov/appellate_trial_courts/appellateDockets/index.cfm?fa=appellateDoc kets.ShowOralArglist&courtID=a01&DocketDate=20140415 (Martines's counsel conceded at oral argument that the warrant authorized drawing and testing of the blood for alcohol: "The trooper quite properly sought and obtained a warrant for the taking of blood from Mr. Martines and the testing of that blood for alcohol.").

The Court of Appeals reversed Martines's conviction. *Figeroa Martines*, 182 Wn. App. 519. Relying on *Skinner v. Railway Labor Executive's Ass'n*, 489 U.S. 602, 616, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989), the court held that testing of a blood sample constitutes a separate search that requires express authorization. *Id.* at 528. The court reasoned that testing of a blood sample "intrudes upon a privacy interest that is distinct from the privacy interests in bodily integrity and personal security that are invaded by a physical penetration of the

skin." *Id.* at 530. The court held that the warrant did not authorize testing at all and therefore the toxicology tests were an unlawful warrantless search. *Id.* at 532.

The State petitioned to this court for review, which we granted. *Figeroa Martines*, 181 Wn.2d 1023. We also granted review of Martines's original issue, which the Court of Appeals did not address: whether probable cause existed to test Martines's blood sample for drugs, as opposed to alcohol.

## ANALYSIS

We review de novo a trial court's legal conclusions on a motion to suppress. *State v. Hinton*, 179 Wn.2d 862, 867, 319 P.3d 9 (2014).

The Fourth Amendment to the United States Constitution provides that warrants may be issued only upon a showing of "probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Probable cause exists if the affidavit supporting the warrant describes facts and circumstances sufficient to establish a reasonable inference that a person is involved in criminal activity and that evidence of the criminal activity can be found at the place to be searched. *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999); *see also State v. Kalakosky*, 121 Wn.2d 525, 536, 852 P.2d 1064 (1993) (noting probable cause is the proper determination for the taking of a suspect's blood). "The standard of reasonableness to be applied takes into consideration the special experience and expertise of the arresting officer." *State v. Fricks*, 91 Wn.2d 391, 398, 588 P.2d 1328 (1979).

We initially address Martines's contingent issue. He argues probable cause did not exist to believe he was under the influence of drugs, as opposed to alcohol. Martines notes the affidavit did not include any statement, fact, or suspicion that he was specifically suspected of drug intoxication. He argues that probable cause to suspect drug intoxication must be identified separately from probable cause to suspect alcohol intoxication. As noted, the Court of Appeals did not address this argument.

We find the argument unconvincing. It ignores that an officer may suspect a driver to be under the influence of alcohol or drugs, or a combination of both. The implied consent statute expressly contemplates this:

> A person is guilty of driving while under the influence of *intoxicating liquor, marijuana, or any drug* if the person drives a vehicle within this state:
> (a) And the person has, within two hours after driving, an alcohol concentration of 0.08 or higher as shown by analysis of the person's breath or blood made under RCW 46.61.506; or
> (b) The person has, within two hours after driving, a THC [(tetrahydrocannabinol)] concentration of 5.00 or higher as shown by analysis of the person's blood made under RCW 46.61.506; or
> (c) While the person is *under the influence of or affected by intoxicating liquor, marijuana, or any drug*; or
> (d) While the person is *under the combined influence of or affected by intoxicating liquor, marijuana, and any drug.*

RCW 46.61.502(1) (emphasis added).

The warrant in this case was supported by probable cause to believe that Martines committed DUI and that evidence of alcohol or drug consumption would be found on his person. The trooper included the following observations in his affidavit of probable cause: (1) Martines had a "strong odor of alcohol coming

-7-

from his breath," (2) "[Martines] said he had one Blue Moon [beer]," (3) Martines was observed throwing a bag into the bushes containing a six-pack container of beer with one unopened beer bottle, which the trooper later recovered, (4) Martines had "blood shot watery eyes," (5) Martines had "a flush face," (6) "[Martines] walked in a slow and deliberate manner," (7) "[Martines] seemed off balance and struck the door frame as he entered the [patrol] car." CP at 98.

While the first three observations relate directly to alcohol intoxication, the remaining observations support a finding of probable cause to believe that Martines was under the influence of intoxicants—alcohol or drugs, or a combination of both. Further, the trooper may have believed Martines's impairment was caused, in part, by drugs, since Martines stated he had only "one" beer. Lastly, the trooper's affidavit stated his special experience and expertise in detecting the effects of alcohol and drug impairment.

Martines cites *State v. Baldwin*, 109 Wn. App. 516, 525, 37 P.3d 1220 (2001), for the proposition that probable cause needs to be separately identified for drugs and alcohol in DUI cases. Martines is partially correct. *Baldwin* stands for the proposition that if alcohol is ruled out as the cause of impairment, a blood draw still requires probable cause to suspect drugs caused the impairment, at least in part. *Id.* at 524-25. Thus, if alcohol is not suspected as a cause of impairment, drug intoxication must be identified separately to draw blood. However, unlike in *Baldwin*, alcohol was not ruled out as the cause of Martines's impairment. We reject Martines's argument that probable cause to suspect drug intoxication must

always be identified separately from probable cause to suspect alcohol intoxication. The affidavit here was sufficient.

Martines next argues that even if the warrant was supported by probable cause to suspect alcohol and drugs, it lacked particularity to authorize blood testing. The Court of Appeals accepted this argument, concluding the warrant's language authorized only the drawing of a blood sample from Martines, not the testing of that sample for drugs or alcohol. *Martines*, 182 Wn. App. at 531. The court reasoned that absent express authorization to test the blood, a vague warrant could potentially allow the State to "rummag[e]" the blood sample for evidence unrelated to DUI. *Id.* We disagree.

The Fourth Amendment and article I, section 7 of our state constitution require that "warrants describe with particularity the things to be seized." *State v. Riley*, 121 Wn.2d 22, 28, 846 P.2d 1365 (1993); *State v. Perrone*, 119 Wn.2d 538, 545, 834 P.2d 611 (1992). This requirement "eliminates the danger of unlimited discretion in the executing officer's determination of what to seize." *Perrone*, 119 Wn.2d at 546. Courts examine the purpose of the "particular description" requirement to determine whether the description is valid. These purposes include (1) preventing exploratory searches, (2) protecting against "seizure of objects on the mistaken assumption that they fall within" the warrant, and (3) ensuring that probable cause is present. *Id.* at 545.

The warrant in this case authorized the "extract[ion]" of a blood sample from Martines, indicating probable cause existed to believe his blood contained

evidence of DUI. CP at 100-01. The purpose of the warrant was to draw a sample of blood from Martines to obtain evidence of DUI. It is not sensible to read the warrant in a way that stops short of obtaining that evidence. A warrant authorizing a blood draw necessarily authorizes blood testing, consistent with and confined to the finding of probable cause. The only way for the State to obtain evidence of DUI from a blood sample is to test the blood sample for intoxicants. *See State v. Grenning*, 142 Wn. App. 518, 532, 174 P.3d 706 (2008) ("[I]t is generally understood that a lawful seizure of apparent evidence of a crime using a valid search warrant includes a right to test or examine the seized materials to ascertain their evidentiary value."), *aff'd*, 169 Wn.2d 47, 234 P.3d 169 (2010).

The court erred in concluding the warrant was fatally deficient. The warrant in this case was supported by probable cause to believe Martines's blood contained evidence of DUI. We apply a commonsense reading to the warrant and conclude it authorized not merely the drawing and storing of a blood sample but also the toxicology tests performed to detect the presence of drugs or alcohol. *See Perrone*, 119 Wn.2d at 549 ("Search warrants are to be tested and interpreted in a commonsense, practical manner, rather than in a hypertechnical sense.").

Lastly, the State argues the search was executed within the scope of the warrant because it acted reasonably in testing the blood sample. Martines does not address the permissible scope of the search, resting his arguments on the warrant's lack of probable cause and particularity. We emphasize that police "must execute a search warrant strictly within the bounds set by the warrant." *State v. Kelley*, 52

-10-

Wn. App. 581, 585, 762 P.2d 20 (1988) (citing *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 394, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971)). The nature of the items to be seized governs the permissible degree of intensity for the search. *State v. Lair*, 95 Wn.2d 706, 717, 630 P.2d 427 (1981).

Here, the warrant referred to the extraction of a blood sample from Martines to obtain evidence of DUI. As discussed above, a warrant authorizing extraction of a blood sample necessarily authorizes testing of that sample for evidence of the suspected crime. The search in this case did not exceed the bounds of the search warrant when a sample of Martines's blood was extracted and tested for intoxicants.

## CONCLUSION

We reverse the Court of Appeals. We hold that a warrant authorizing the testing of a blood sample for intoxicants does not require separate findings of probable cause to suspect drug and alcohol use so long as there is probable cause to suspect intoxication that may be caused by alcohol, drugs, or a combination of both. We further hold that the search warrant authorized testing Martines's blood sample for intoxicants because it authorized a blood draw to obtain evidence of DUI.

_Stephens, J._

WE CONCUR:

_Madsen, C.J._

_Johnson, J._

_Wiggins, J._

_González, J._

_Owens, J._

_Gordon McCloud, J._

_Fairhurst, J._

_Yu, J._