IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50173-2-II |
| Respondent, | |
| v. | |
| CHARLES LEE BURKE, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Charles Lee Burke appeals his convictions for possession of a controlled substance and harassment.[1]  Burke argues that the trial court erred in denying his motion to suppress because (1) the complaint for a search warrant for his motorhome failed to establish probable cause to believe that (a) he was involved in the crime of harassment, and (b) evidence of harassment would be found in his motorhome; and (2) the deputy unlawfully tested suspected methamphetamine without a warrant.  We hold that the trial court did not err in denying Burke's motion to suppress.  Accordingly, we affirm.

FACTS

A.    CHARGES AND INCIDENT

In July 2016, Burke and Joseph Prince spoke about Burke moving his motorhome, which had been parked on the street partially blocking access to Prince's home for "one to two weeks."

---

[1] The State charged and Burke was convicted of gross misdemeanor harassment under RCW 9A.46.020(2)(a).

Clerk's Papers (CP) at 62. Burke began to yell and scream at Prince. Burke told Prince that "he was going to get his gun from his [motorhome] and end his problem."[2] CP at 63. This frightened Prince. Prince was certain that "if he had stayed, [Burke] would have assaulted him with some type of weapon, based on how angry [Burke] was." CP at 62. Prince got into his girlfriend's car and told her to call 911 because Burke had threatened him with a gun. Burke left the scene.

Deputy Andrews of the Kitsap County Sheriff's Office responded to the 911 call. Deputy Andrews was told that the 911 caller reported that

> a male was outside their home with gun and appeared to be under the influence of narcotics. . . . [T]he male stated he was going to end the problem and threatened to kill the caller's boyfriend. . . . [T]he male was wearing a baseball cap and was leaving in a large [motorhome]. . . . [T]he [motorhome] was leaving the scene and would likely end up in the Gorst area of Kitsap County.

CP at 61-62. Deputy Andrews was also given the license plate of the motorhome that the 911 caller provided.

Deputy Andrews located the motorhome with the license plate matching that given by the 911 caller "traveling in the northbound lane of SR 3" and stopped the motorhome "in the parking lot of Viking Fence." CP at 62. Burke was the sole occupant in the motorhome. Burke was detained, and his motorhome was impounded. Law enforcement took Burke's motorhome to a secured impound lot.

---

[2] Prince did not see Burke with a gun. Burke told deputies that he did not have a gun but said he told Prince, "what if I was someone else and got a gun." CP at 62.

B.    WARRANT AND SEARCH

The Kitsap County Sheriff's Office later applied for and obtained a search warrant for Burke's motorhome. The complaint for a search warrant stated that deputies responded to a "man with a gun" call where the caller reported that "Burke was outside of their home, high on narcotics and armed with a gun." CP at 18. The search warrant complaint also stated that Prince had asked Burke to move his motorhome and that Burke told Prince "he was going to get a gun from the motorhome and 'end this problem.'" CP at 18. The complaint further stated that Prince jumped into his girlfriend's car and told her to call 911.

A search warrant was issued pursuant to this search warrant complaint. The search warrant allowed deputies to search for "any fruits, instrumentalities and/or evidence of the crime(s) of Harassment," including "[a]ny and all firearms, including but not limited to handguns, shotguns and/or rifles," "[a]ny and all firearm ammunition," "[a]ny paperwork showing ownership, or purchase information for firearms," and "[a]ny evidence showing dominion and control of the vehicle." CP at 21.

While executing the search warrant, a deputy found a cardboard box wrapped in plastic in Burke's motorhome. The deputy opened the box because it was large enough to contain a gun or ammunition. Inside the box, the deputy located "numerous used hypodermic syringes and a small, plastic Tupperware container which contained a crystalline substance that he recognized from his training and experience to be methamphetamine." CP at 63. Another deputy tested the suspected

methamphetamine, which resulted in a presumptive positive reading for methamphetamine. The suspected methamphetamine and box were logged into evidence.[3]

When Burke later went to take possession of his motorhome, he was arrested. The State charged Burke with possession of a controlled substance (Count I) and harassment (Count II).

C.      MOTION TO SUPPRESS

Pretrial, Burke moved to suppress all the evidence obtained from the search of his motorhome. Burke argued that the "search warrant was not valid as it was not supported by probable cause" and that the "subsequent search of the syringes and testing for illegal substances was done without a search warrant." CP at 12, 14. Specifically, Burke argued that no probable cause existed because harassment only required a "threat to cause bodily injury be made which places the person in reasonable fear that the threat will be carried out." CP at 13. Burke also argued that the deputy's testing was improper because it was done without a warrant. The trial court denied Burke's motion, concluding that the deputy "did not need a second search warrant to search the box or the Tupperware container." CP at 55.

Burke moved the trial court to reconsider its denial of his motion to suppress. The trial court concluded that there was an insufficient basis for reconsideration and denied Burke's motion.

D.      TRIAL AND APPEAL

Burke proceeded to a bench trial on stipulated facts. The trial court found Burke guilty as charged. Burke appeals.

---

[3] The Washington State Patrol Crime Lab later tested the suspected methamphetamine and confirmed that the substance was in fact methamphetamine.

ANALYSIS

A.     PROBABLE CAUSE

Burke argues that the trial court erred in denying his motion to suppress because the complaint for a search warrant failed to establish probable cause to believe that evidence of the crime of harassment would be found in his motorhome. We disagree.

1.     Legal Principles

We review a trial court's determination of probable cause de novo. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). In doing so, we determine "whether the qualifying information as a whole amounts to probable cause." *State v. Dunn*, 186 Wn. App. 889, 896, 348 P.3d 791, *review denied*, 184 Wn.2d 1004 (2015). This review is limited to the four corners of the document supporting probable cause. *Neth*, 165 Wn.2d at 182. Facts that, standing alone, do not support probable cause can support probable cause when viewed together with other facts. *State v. Cole*, 128 Wn.2d 262, 286, 906 P.2d 925 (1995). We review the supporting affidavit "in a commonsense manner, rather than hypertechnically," and resolve any doubts in favor of the warrant. *State v. Lyons*, 174 Wn.2d 354, 360, 275 P.3d 314 (2012) (quoting *State v. Jackson*, 150 Wn.2d 251, 265, 76 P.3d 217 (2003)).

A judge may issue a search warrant only if the affidavit establishes probable cause. *State v. Powell*, 181 Wn. App. 716, 723, 326 P.3d 859, *review denied*, 181 Wn.2d 1011 (2014). To establish probable cause, the affidavit for the search warrant must set forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched. *Id.* at 723-24.

There must be a nexus between the criminal activity and the item to be seized and a nexus between the item to be seized and the place to be searched. *Id*. at 724.

Under RCW 9A.46.020(1), a person is guilty of harassment if (1) without lawful authority, the person knowingly threatens to cause bodily injury immediately or in the future to another person, and (2) the person by words or conduct places the other person in reasonable fear that the threat will be carried out. In order to avoid unconstitutional infringement on protected speech, the harassment statute must be read to only prohibit "true threats." *State v. Kilburn*, 151 Wn.2d 36, 43, 84 P.3d 1215 (2004).

A "true threat" is a statement made in a context or under circumstances wherein a reasonable person would foresee that the statement would be interpreted as a serious expression of intent to inflict bodily harm upon another. *State v. Barnes*, 158 Wn. App. 602, 610, 243 P.3d 165 (2010). "A true threat is a serious threat, not one said in jest, idle talk, or political argument." *Kilburn*, 151 Wn.2d at 43. Whether a "true threat" is made is determined under an objective standard that focuses on the speaker. *Id.* at 44. When a person makes a threat involving a gun, whether that person had access to a gun when the threat was made is relevant to whether a "true threat" was made for purposes of harassment. *See Barnes*, 158 Wn. App. at 610.

2.      Involvement in Criminal Activity

To establish probable cause that Burke was involved in the crime of harassment, the affidavit supporting the search warrant had to set forth facts and circumstances sufficient to establish a reasonable inference that Burke was probably involved in the crime of harassment. *Powell*, 181 Wn. App. at 723-24. Burke concedes that the search warrant complaint contained

sufficient facts and circumstances to establish probable cause to believe that he was involved in the crime of harassment.

Here, the search warrant complaint stated that Prince said he asked Burke to move his motorhome, and Burke told Prince that "he was going to get a gun from the motorhome and 'end this problem.'" CP at 18. This fact is sufficient to establish the first element of harassment—Burke knowingly threatened to cause bodily injury to Prince. The search warrant complaint also stated that Prince jumped in his girlfriend's car and told her to call 911. This fact is sufficient to establish the second element of harassment—Burke's threat placed Prince in reasonable fear that the threat would be carried out. Together, these facts set forth both elements of harassment and thus are sufficient to establish a reasonable inference that Burke was involved in harassment.

We accept Burke's concession that the trial court did not err in denying Burke's motion to suppress because the complaint for a search warrant established probable cause to believe that he was involved in the crime of harassment.

    3.    Nexus Between Item to be Seized and the Place to be Searched

Burke argues that the search warrant complaint failed to establish probable cause to believe that evidence of the crime of harassment would be found in his motorhome. We disagree.

To establish probable cause, the affidavit supporting the search warrant request must establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched. *Powell*, 181 Wn. App. at 723-24. Thus, there must be a nexus between the criminal activity and the item to be seized and a nexus between the item to be seized and the place to be searched. *Id.* at 724. Therefore, the

relevant inquiry is whether the affidavit supporting the search warrant set forth facts and circumstances sufficient to establish a reasonable inference that evidence of the crime of harassment could be found in Burke's motorhome.

Here, the search warrant complaint stated that deputies responded to a "man with a gun" call, where the caller reported "Burke was outside of their home, high on narcotics and armed with a gun." CP at 18. The search warrant complaint also stated that Burke told Prince that "he was going to get a gun from the motorhome and 'end this problem.'" CP at 18. These statements created a nexus between the criminal activity, the threat, and the item to be seized, a gun, because Burke threatened to get a gun and end the problem between Burke and Prince. These statements also created a nexus between the item to be seized, a gun, and the place to be searched, the motorhome, because Burke said he would get a gun from his motorhome. Thus, the search warrant complaint set forth sufficient facts and circumstances to establish a reasonable inference that evidence of harassment could be found in Burke's motorhome, along with the required nexuses between the crime, the item to be seized, and the place to be searched.

Burke argues that the complaint did not establish that evidence of the crime of harassment would be found in the motorhome because no gun was ever seen by any witness and the crime is complete once the threat is made. Although the crime of harassment only requires that a threat be made placing a person in reasonable fear, when a person makes a threat involving a gun, whether that person had access to a gun when the threat was made is relevant to whether a "true threat" was made for purposes of harassment. *See Barnes*, 158 Wn. App. at 610. Here, Burke said that he had access to a gun in his motorhome. As a result, a reasonable inference existed that evidence of

harassment, in particular a "true threat," could be found in the motorhome. Therefore, we hold that the trial court did not err in denying Burke's motion to suppress because the complaint for a search warrant established probable cause to believe that evidence of the crime of harassment could be found in his motorhome.

B. LACK OF A WARRANT FOR TESTING

Burke argues that the trial court erred in denying his motion to suppress because the deputy unlawfully tested the methamphetamine found in his motorhome without a warrant. We disagree.

1. Legal Principles

We review a trial court's conclusions of law in a suppression decision de novo. *State v. VanNess*, 186 Wn. App. 148, 154, 344 P.3d 713 (2015). "As a general rule, warrantless searches and seizures are per se unreasonable, in violation of the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution." *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). In particular, the Fourth Amendment "protects against unreasonable searches that intrude on a citizen's subjective and reasonable expectation of privacy." *State v. Harlow*, 85 Wn. App. 557, 564, 933 P.2d 1076 (1997). And article I, section 7 provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." *VanNess*, 186 Wn. App. at 155. But there are a few exceptions to the warrant requirement. *Garvin*, 166 Wn.2d at 249. The State must demonstrate that a warrantless search or seizure falls within an exception to the warrant requirement. *Id.* at 250.

Under the plain view exception, an officer can seize items in plain view without a warrant if (1) there is a valid justification for the intrusion into a constitutionally protected area, and (2)

9

the item seen is immediately recognized as incriminating evidence associated with criminal activity. *State v. O'Neill*, 148 Wn.2d 564, 582-83, 62 P.3d 489 (2003). Officers do not need to be certain the item is evidence of a crime—"probable cause is sufficient." *State v. Weller*, 185 Wn. App. 913, 926, 344 P.3d 695, *review denied*, 183 Wn.2d 1010 (2015). Probable cause exists when an officer is aware of facts and circumstances sufficient to cause a reasonable person to believe a crime has been or is being committed. *State v. Greene*, 97 Wn. App. 473, 478, 983 P.2d 1190 (1999). "[I]t is generally understood that a lawful seizure of apparent evidence of a crime using a valid search warrant includes a right to test or examine the seized materials to ascertain their evidentiary value." *State v. Grenning*, 142 Wn. App. 518, 532, 174 P.3d 706 (2008), *aff'd*, 169 Wn.2d 47 (2010).

Under RCW 69.50.4013(1), "It is unlawful for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his or her professional practice, or except as otherwise authorized by this chapter." Methamphetamine is considered a controlled substance for purposes of unlawful possession. RCW 69.50.206(d)(2).

2.      Warrant for Testing

Here, the deputy did not need a second warrant to test the methamphetamine because it was lawfully seized under the plain view exception. First, the deputy had a valid justification for the intrusion into the motorhome, and specifically, the box in which the methamphetamine was found. The deputy was executing a valid search warrant for firearms, ammunition, and evidence of dominion and control; the box was large enough to contain a firearm or ammunition. Second,

when the deputy opened the box, he immediately recognized the substance inside as incriminating evidence of criminal activity; from his training and experience, the deputy recognized the substance as methamphetamine, which is illegal to possess. Thus, the deputy could lawfully seize the methamphetamine. And because the deputy could lawfully seize the methamphetamine, the deputy could also test it to ascertain its evidentiary value. *Grenning*, 142 Wn. App. at 532.

Burke cites to *State v. Martines*, 184 Wn.2d 83, 355 P.3d 1111 (2015), in support of his claim. In *Martines*, the defendant's blood was extracted pursuant to a warrant and tested. 184 Wn.2d at 86. The defendant was suspected of driving under the influence. *Id*. Division One of this court held that the testing of the blood was an unlawful warrantless search. *Id*. The court reasoned that "drawing blood and testing blood constitute[d] separate searches." *Id*. Our Supreme Court reversed and held that "the search warrant authorized testing [the defendant's] blood sample for intoxicants because it authorized a blood draw to obtain evidence of DUI." *Id.* at 94.

Thus, *Martines* does not support Burke's claim. In fact, *Martines* appears to support the opposite, that a second warrant was not required. The warrant in this case authorized the search and seizure of firearms, ammunition, and evidence of dominion and control. Pursuant to this warrant, the deputy found a box that was large enough to contain a gun or ammunition. When the deputy opened the box, he recognized the substance found in the box as methamphetamine. Following the reasoning set forth in *Martines*, because the deputy was authorized to seize the box under the plain view exception to obtain evidence of unlawful possession, the deputy was also authorized to test the substance that was found inside the box. Although the warrant in this case did not authorize a search for controlled substances, the controlled substance was lawfully seized

pursuant to the plain view exception and this lawful seizure provided the deputy with the right to test or examine the seized substance to ascertain its evidentiary value. *Grenning*, 142 Wn. App. at 532. Therefore, Burke's claim fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, C.J.

Melnick, J.