IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 9, 2024 Session

**STATE OF TENNESSEE v. RITIKA ARORA**

**Appeal from the Circuit Court for Williamson County**
No. J-CR210459   Deanna B. Johnson, Judge

————————————————

**No. M2024-00147-CCA-R9-CO**

————————————————

The Defendant, Ritika Arora, was charged in the Williamson County Circuit Court with driving under the influence ("DUI"), DUI per se, simple possession, and possession of drug paraphernalia and filed a motion to suppress the results of her blood alcohol test because the search warrant authorizing her blood draw did not expressly authorize chemical analysis of her blood sample. The trial court granted the motion, and the State filed this interlocutory appeal. Based upon the oral arguments, the record, and the parties' briefs, we conclude that the order granting the motion to suppress should be reversed and that the case should be remanded to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 9; Order of the Circuit Court Reversed, Case Remanded**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and ROBERT W. WEDEMEYER, J., joined.

Jonathan Skrmetti, Attorney General and Reporter; Edwin Alan Groves, Jr., Assistant Attorney General; Kim R. Helper, District Attorney General; and Dale Evans, Cooper Byers, and Shyanne C. Riddle, Assistant District Attorneys General, for the appellant, State of Tennessee.

James Robin McKinney, Jr., Nashville, Tennessee, for the appellee, Ritika Arora.

**OPINION**

**FACTS**

According to the facts set out in the affidavit of complaint, which the parties do not dispute in this appeal, at 4:20 p.m. on July 26, 2020, Deputy Ben Copenhaver of the Williamson County Sheriff's Department responded to a single-vehicle crash with injuries

on Patton Road. The vehicle had left the roadway and struck a tree. When Deputy Copenhaver arrived at the scene, the Defendant stated that she had consumed one glass of wine at Arrington Vineyards. The Defendant smelled of alcohol; had watery, bloodshot eyes and slurred speech; and was unsteady on her feet. Deputy Copenhaver administered field sobriety tests, and the Defendant performed poorly, indicating to the officer that she was impaired. Deputy Copenhaver searched the Defendant's purse for weapons and found a green, leafy substance consistent with marijuana. He transported her to the Criminal Justice Center, where law enforcement searched two more bags belonging to her. They found a pipe, rolling papers, two grinders, and a cigarette roller.

The Defendant refused consent for a blood draw, so Deputy Copenhaver filled out and signed a form affidavit of complaint in which he stated, in pertinent part:

> I know from my training and experience that alcohol and other intoxicating substances are absorbed into the bloodstream of an intoxicated person and that the blood of such person can be analyzed for the presence of alcohol and other intoxicating substances.

> For the above reasons, I, Deputy Ben Copenhaver, Badge 2175 request that blood be drawn from, to obtain evidence existing within the body or blood of [the Defendant] of any intoxicant, marijuana, controlled substance, drug, substance affecting the central nervous system or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of himself which he/she would otherwise possess. The presence of the above substances, drugs, intoxicants and/or its derivatives constitutes critical evidence of a violation of T.C.A. §55-10-401.

> WHEREFORE, based upon this affidavit Affiant asks for a search warrant that will authorize Affiant or Affiant's agent to search the person of the suspect for the blood evidence described above and seize the same as evidence that the offense described was committed and that the suspect committed the said offense.

Deputy Copenhaver appeared before a magistrate, and the magistrate issued a form search warrant at 5:33 p.m. The warrant provided:

> Whereas, the Affiant, whose name appears on the Affidavit attached hereto is a peace officer under the laws of Tennessee and did heretofore this day subscribed and swore to said affidavit before me, (which said Affidavit is here now made a part hereof for all purposes and incorporated herein as if

- 2 -

written verbatim within the confines of this warrant) and whereas I find that the verified facts stated by Affiant in said Affidavit show that Affiant has probable cause for the belief Affiant expresses herein and establishes the existence of proper grounds for the issuance of this Warrant:

Now, therefore, you are commanded to take custody of the suspect and transport the suspect to a person qualified to draw blood in Williamson County, Tennessee where you shall search for, seize and maintain as evidence the property described in said Affidavit, to-wit: human blood from the body of the following described individual[.]"

The warrant then listed the Defendant's name, race, sex, date of birth, driver's license number, height, weight, and hair color and continued as follows:

There exists evidence of any intoxicant, marijuana, controlled substance, drug, substance affecting the central nervous system or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of himself which he would otherwise possess, which would **serve as evidence of a violation of T.C.A. §55-10-401 [Driving Under the Influence],** a criminal offense within the State of Tennessee.

Law enforcement officers are authorized to use all reasonable force necessary to assist the physician, registered nurse, licensed practical nurse, Clinical laboratory technician, technologist, trained phlebotomist, licensed emergency medical technician, licensed paramedic or medical laboratory technician to take the samples from the body of the above described person. After obtaining the samples of blood, the samples shall be delivered to the said law enforcement officer.

Deputy Copenhaver executed the search warrant, and a qualified technician or phlebotomist collected the Defendant's blood at 5:53 p.m. Testing on the blood revealed a blood alcohol content ("BAC") of 0.154 gram percent.

In December 2021, the Williamson County Grand Jury indicted the Defendant for DUI, DUI per se, simple possession, and possession of drug paraphernalia. On August 8, 2023, the Defendant filed a motion to suppress the result of her blood test. In the motion, the Defendant asserted that the testing of her blood constituted a search separate from the collection of her blood and that the testing exceeded the scope of the search warrant because the warrant did not expressly authorize such testing.

- 3 -

On October 30, 2023, the trial court held a hearing on the motion. During the hearing, the State argued that the Defendant did not have a reasonable expectation of privacy in her blood after it was collected pursuant to a valid search warrant. The State advised the trial court that it had been unable to find a case on point in Tennessee but that numerous cases in other jurisdictions supported the State's position.

On November 9, 2023, the trial court entered a written order granting the Defendant's motion to suppress. First, the trial court found that "[the] Defendant's blood draw and its subsequent testing and analysis [were] both subject to the constitutional limits imposed by the Fourth Amendment to the United States Constitution and Article I, Section 7, of the Tennessee Constitution." The trial court then found that the State failed to abide by the terms of the warrant when it analyzed the Defendant's blood because the warrant did not expressly authorize that the blood be tested. Accordingly, the trial court concluded that the testing was unconstitutional and granted the Defendant's motion to suppress her blood test result.

## ANALYSIS

On appeal, the State contends that the trial court erred by granting the motion to suppress because the execution of a valid search warrant for collecting the Defendant's blood extinguished her privacy interests in the contents of her blood. The Defendant maintains that the collection and subsequent analysis of a blood sample implicate separate privacy interests such that a search warrant must expressly authorize both the blood draw and the chemical testing of the blood sample. She also maintains that the chemical analysis of her blood constituted an unlawful search because the warrant only authorized the taking of her blood. We conclude that the trial court erred by granting the motion to suppress.

In reviewing a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id*. Nevertheless, appellate courts will review the trial court's application of law to the facts purely de novo. *See State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001). Furthermore, the Defendant, as the prevailing party, is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Odom*, 928 S.W.2d at 23.

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution provide protection for citizens against "unreasonable searches and seizures." *See* U.S. Const. amend. IV; Tenn. Const. art. 1, § 7. Generally, a

- 4 -

warrantless search is considered presumptively unreasonable and, thus, violative of constitutional protections. *See State v. Walker*, 12 S.W.3d 460, 467 (Tenn. 2000). In *Skinner v. Ry. Labor Executives' Assn.*, 489 U.S. 602, 616-18 (1989), the United States Supreme Court determined that the drawing of an individual's blood and the subsequent chemical analysis of that blood were searches that implicate Fourth Amendment concerns. Therefore, when a defendant arrested for DUI does not consent to a blood draw, "a warrant or exigent circumstances excusing the failure to obtain a warrant" are required. *State v. Hafer*, No. E2018-02076-CCA-R9-CD, 2020 WL 918653, at *8 (Tenn. Crim. App. Feb. 26, 2020) (quoting *Commonwealth v. Dennis*, 135 N.E.3d 1070, 1078-79 (Mass. Ct. App. 2019)), *no perm. app. filed*.

In considering whether to grant the Defendant's motion, the trial court first found, pursuant to *Skinner* and our own supreme court's opinion in *State v. Scarborough*, 201 S.W.3d 607 (Tenn. 2006), that the taking and subsequent testing of the Defendant's blood were separate searches under the Fourth Amendment. In *Scarborough*, our supreme court analyzed the constitutionality of the DNA collection statute, Tennessee Code Annotated section 40-35-321, which sets out the circumstances in which a convicted and incarcerated defendant is required to submit a biological specimen for DNA analysis. 201 S.W.3d at 616. The DNA profile is maintained in a searchable database known as "CODIS." *Id*. Our supreme court recalled from *Skinner* that "the physical intrusion occasioned by a blood draw 'infringes an expectation of privacy'" and that "'[t]he ensuing chemical analysis of the sample to obtain physiological data is a further invasion of the tested [individual's] privacy interests.'" *Id*. at 616 (quoting *Skinner*, 489 U.S. at 616). Noting that the Fourth Amendment deems searches conducted pursuant to a search warrant reasonable but that the collection and analysis of blood pursuant to the DNA collection statute are undertaken without either a warrant or reasonable suspicion, the court "look[ed] for another basis upon which to analyze the reasonableness of these searches." *Id*. at 617. The court proceeded to address separately Mr. Scarborough's privacy interest in his blood draw and his privacy interest in the DNA analysis of his blood. *See id*. at 619. Applying the totality of the circumstances test, the court ultimately concluded that the collection and DNA analysis pursuant to the statute are reasonable searches that do not violate a defendant's rights under the federal or state constitutions. *Id*. at 622.

Turning to the present case, neither the State nor the Defendant challenge the legality of the search warrant obtained by Deputy Copenhaver. Moreover, the State acknowledges that according to *Skinner* and *Scarborough*, a person has a privacy interest in the testing of a blood sample. However, the State asserts that the trial court misinterpreted both cases because "this privacy interest, like any other, can be reduced or forfeited after the execution of a valid search warrant." The State further asserts that the lawful taking of the Defendant's blood pursuant to the search warrant extinguished her privacy interests in her blood sample.

At oral arguments, the State relied on *Schmerber v. California*, 384 U.S. 757, 770-71 (1966), in which the United States Supreme Court held that a warrantless blood draw for the testing of a defendant's BAC in a drunk driving case can be constitutionally reasonable under the exigent circumstances exception to the warrant requirement. As the State noted, after the blood is drawn, the exigency ceases; yet nothing in *Schmerber* indicates that the State must obtain a second warrant for the blood testing. The problem with the State's reliance on *Schmerber* is that the petitioner in *Schmerber* did not raise, and therefore the court did not consider, whether a blood draw and a blood test are separate searches. Moreover, the United States Supreme Court released its opinion in *Schmerber* twenty-three years before it held in *Skinner* that "the collection and subsequent analysis of the requisite biological samples must be deemed Fourth Amendment searches." *Skinner*, 489 U.S. at 618.

In its appellate brief, the State relies on two additional cases: *Bates v. State*, No. E2017-01613-CCA-R3-PC, 2019 WL 211200 (Tenn. Crim. App. Jan. 16, 2019), *perm. app. denied*, and *State v. Morris*, 469 S.W.3d 577 (Tenn. Crim. App. 2014). In *Bates*, this court held that a petitioner's trial counsel was not ineffective for failing to file a motion to suppress the results of a scientific "temperature study" conducted on the petitioner's car because the police seized the car pursuant to a valid search warrant. 2019 WL 211200, at *13. Even though the warrant did not expressly authorize the study, this court noted that "police officers 'routinely and properly conduct testing of items taken into evidence.'" *Id*. (quoting *State v. Holladay*, No. E2004-02858-CCA-R3-CD, 2006 WL 304685, at *7 (Tenn. Crim. App., Feb. 8, 2006) (J. Wade, concurring), *no perm. app. filed*). In *Morris*, this court concluded that the police could take a "second look" at items previously seized during an inventory search because "once a person has 'been lawfully arrested and his property has been lawfully seized . . . the arrestee has no reasonable expectation of privacy in that property[.]'" 469 S.W.3d 577, 584 (Tenn. Crim. App. 2014) (quoting *Williams v. Commonwealth*, 527 S.E.2d 131, 136 (Va. 2000)).

The State's reliance on *Bates* and *Morris* is misplaced, though, because our supreme court specifically stated in *Scarborough* that the chemical analysis of blood constitutes a separate and discrete invasion of privacy for Fourth Amendment purposes from the physical extraction of that blood. Moreover, because the testing is a separate search, it follows that a search warrant is required for that testing, just as a search warrant would be required for a cell phone found in a home searched pursuant to a warrant. *See, e.g.*, *Riley v. California*, 573 U.S. 373, 401 (2014) (concluding that a warrant is generally required to search a cell phone, even when the cell phone is lawfully seized incident to an arrest). Thus, we conclude that the trial court correctly found that the testing of the Defendant's blood was a separate search under the Fourth Amendment and turn to whether the chemical analysis of the Defendant's blood sample exceeded the scope of the search warrant.

"Under the Fourth Amendment a search warrant must contain a particular description of the items to be seized." *State v. Henning*, 975 S.W.2d 290, 296 (Tenn. 1998). Additionally, article I, section 7 of the Tennessee Constitution prohibits general warrants, and Tennessee Code Annotated section 40-6-103 requires that search warrants "particularly describ[e]" the property to be searched. "A warrant satisfies the particularity requirement if it leaves nothing about its scope to the discretion of the officer serving it." *State v. McLawhorn*, 636 S.W.3d 210, 243 (Tenn. Crim. App. 2020) (quoting *State v. Henderson*, 854 N.W.2d 616, 633 (Neb. 2014). As this court recently explained,

> "[T]he Fourth Amendment confines an officer executing a search warrant strictly within the bounds set by the warrant." *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 394 n.7 (1971); *see Dalia v. United States*, 441 U.S. 238, 260 (1979) (Brennan, J., concurring in part). The language of the search warrant must be strictly construed. *United States v. Wright*, 468 F.2d 1184, 1185 (6th Cir. 1972) (citation omitted); *see State v. Wilson*, No. 153, 1988 WL 42652, at *2 (Tenn. Crim. App. May 4, 1988). A search pursuant to a valid search warrant may evolve into an invalid search if the officers executing the search warrant flagrantly disregard the limitations of the search warrant. *United States v. Lambert*, 771 F.2d 83, 93 (6th Cir. 1985). An officer flagrantly disregards the limitations of a warrant only where he exceeds the scope of the warrant in the places searched. *Waller v. Georgia*, 467 U.S. 39, 43 n.3 (1984).

*State v. Kroese*, No. M2022-01180-CCA-R3-CD, 2024 WL 2034366, at *16 (Tenn. Crim. App. May 7, 2024), *perm. app. filed* (Tenn. July 8, 2024).

In the Defendant's memorandum of law in support of her motion to suppress the blood test results, she relied on *State v. Nunnery*, No. M2016-01932-CCA-R9-CD, 2017 WL 2985084 (Tenn. Crim. App. July 13, 2017), *no perm. app. filed*, to argue that the chemical analysis of her blood exceeded the scope of the search warrant. The trial court also relied on *Nunnery* in its order granting the motion. In *Nunnery*, the defendant was arrested in Lewis County for DUI and refused consent for a blood draw. 2017 WL 2985084, at *1. The arresting officer obtained a search warrant, which commanded that the officer transfer the defendant to a person qualified to draw blood in Lewis County for a blood sample. *Id*. The officer transported the defendant to a hospital in Lewis County for the blood draw, but the nurse refused to collect the blood because the defendant would not cooperate. *Id*. The officer then transported the defendant to a hospital in Perry County, where a registered nurse drew the blood. *Id*. The defendant filed a motion to suppress his blood test result because the search warrant did not authorize the blood draw in Perry County. *Id*. The trial court granted the motion, and this court affirmed, concluding that "the officer's failure to abide by the terms of the search warrant during its execution

- 7 -

rendered the blood draw unconstitutional." *Id*. at \*8. However, *Nunnery* is inapposite to this case. The officer who executed the search warrant in *Nunnery* failed to abide by an expressed jurisdictional requirement of the warrant: that the defendant's blood sample be collected in Lewis County. The issue here is whether the State could test the blood sample when the search warrant did not expressly authorize such testing.

In considering the scope of the warrant, we think that the Texas Court of Criminal Appeals' explanation in *Crider v. State*, 607 S.W.3d 305, (Tex. Crim. App. 2020), is particularly helpful. Like our supreme court in *Scarborough*, the Texas Court of Criminal Appeals has recognized that "[w]here the drawing of blood is instigated by the government, a subsequent analysis of the blood by government agents also constitutes an invasion of a societally recognized expectation of privacy." *State v. Hardy*, 963 S.W.2d 516, 523 (Tex. Crim. App. 1997) (citing *Skinner*, 489 U.S. at 616). The Texas court considered whether a warrant for the extraction of blood also must expressly authorize testing of the blood and explained as follows:

> "[T]he ultimate touchstone of the Fourth Amendment is reasonableness." *Riley v. California*, 573 U.S. 373, 381-82 (2014) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). A neutral magistrate who has approved a search warrant for the extraction of a blood sample, based upon a showing of probable cause to believe that a suspect has committed the offense of driving while intoxicated, has necessarily also made a finding of probable cause that justifies chemical testing of that same blood. Indeed, that is the purpose of the blood extraction. This means that the constitutional objective of the warrant requirement has been met: the interposition of a neutral magistrate's judgment between the police and the citizen to justify an intrusion by the State upon the citizen's legitimate expectation of privacy. *See State v. Villarreal*, 475 S.W.3d 784, 795-96 (Tex. Crim. App. 2014) (op. on orig. subm.) (citing *Johnson v. United States*, 333 U.S. 10, 13-14 (1948), for the proposition that the purpose of the Fourth Amendment's warrant requirement is to provide a neutral arbiter between the police and citizens to determine whether probable cause exists to justify a police intrusion). Whether we say the warrant that justifies extraction of the blood also, by necessary implication, justifies chemical testing, or we simply acknowledge that a magistrate's finding of probable cause to extract the blood for chemical testing necessarily constitutes a finding of probable cause also to conduct the chemical test for intoxicants, is of no moment. However we choose to characterize it, the chemical testing of the blood, based upon a warrant that justifies the extraction of blood for that very purpose, is a reasonable search for Fourth Amendment purposes.

*Crider*, 607 S.W.3d at 307-08; *see State v. Swartz*, 517 S.W.3d 40, 49 (Mo. App. W.D. 2017) (rejecting the defendant's claim that the search warrant, which authorized the search and seizure of the defendant's body to obtain a blood sample, was insufficient to authorize both the drawing and testing of the blood when the warrant was supported by an affidavit establishing probable cause that the search would locate evidence of the crime of driving while intoxicated); *State v. Martines*, 355 P.3d 1111, 1115 (Wash. 2015) ("A warrant authorizing a blood draw necessarily authorizes blood testing, consistent with and confined to the finding of probable cause. The only way for the State to obtain evidence of DUI from a blood sample is to test the blood sample for intoxicants.").

Although not on point, *State v. Kilgore*, No. M2020-00121-CCA-R3-CD, 2021 WL 3124249, at *1 (Tenn. Crim. App. July 23, 2021), *no perm. app. filed*, also is informative. In *Kilgore*, law enforcement obtained a warrant to search the defendant's truck for physical evidence, including blood, hair, and DNA. 2021 WL 3124249, at *7. After the defendant was charged with multiple crimes, she filed a motion to suppress the evidence obtained from the search, arguing that the warrant's failure to state specifically that the officers were authorized to seize the truck and its contents meant that they were limited to "'a basic search of the vehicle.'" *Id*. The trial court denied the motion and this court affirmed, concluding that the warrant's failure to include the word "seize" did not invalidate the warrant. *Id*. at *8. As this court stated,

> A logical, commonsense reading of the warrant, which described in great detail objects that would necessarily require laboratory analysis, shows that the warrant was meant to authorize the search and seizure of the items.

*Id*.

The warrant in this case authorized Deputy Copenhaver to "search for, seize and maintain as evidence" the Defendant's blood and identified her by name, race, sex, date of birth, driver's license number, height, weight, and hair color. Contrary to the Defendant's argument, the search warrant in this case is not a general warrant. Immediately below the Defendant's identifying information, the warrant provided, "There exists evidence of any intoxicant, marijuana, controlled substance, drug, substance affecting the central nervous system or combination thereof that impairs the driver's ability to safely operate a motor vehicle." Although the warrant did not specifically state that the blood was to be "tested," "analyzed," or "examined" for such intoxicants, a logical, commonsense reading of the warrant shows that the warrant was meant to authorize such analysis because an intoxicating substance cannot be found in blood unless the blood is tested. Therefore, we conclude that the search warrant authorized the taking and analysis of the Defendant's blood.

In any event, "[a] search warrant may . . . be construed with a supporting affidavit if the affidavit accompanies the warrant and the warrant expressly incorporates the affidavit by reference." *State v. Lowe*, 949 S.W.2d 300, 303 (citing *United States v. Blakeney*, 942 F.2d 1001, 1024 (6th Cir. 1991)). The warrant in this case specifically incorporated Deputy Copenhaver's affidavit, which was "attached hereto." In the affidavit, Deputy Copenhaver stated that based on his training and experience, he knew that blood could be "analyzed" for the presence of alcohol and other intoxicating substances and that he was requesting that blood be drawn from the Defendant in order to obtain evidence of such intoxicants in her blood. Thus, we conclude that the chemical analysis of the Defendant's blood did not exceed the scope of the warrant.

## CONCLUSION

Based upon the oral arguments, the record, and the parties' brief, the trial court's order granting the Defendant's motion to suppress is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

s/ John W. Campbell
JOHN W. CAMPBELL, SR., JUDGE